**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 19 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

# UNITED STATES COURT OF APPEALS
## TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

ALBERTSON WILLIE, JR.,

    Defendant-Appellant.

No. 00-2186

---

Appeal from the United States District Court
for the District of New Mexico
(D.C. No. CR-99-1114-JC)

---

Susan Bronstein Dunleavy, Assistant Federal Public Defender, Albuquerque, New Mexico, for Defendant-Appellant.

James Miles Hanisee, Office of the United States Attorney, Albuquerque, New Mexico (Norman C. Bay, United States Attorney, and David N. Williams, Assistant U.S. Attorney, Albuquerque, New Mexico, on the brief), for Plaintiff-Appellee.

---

Before **SEYMOUR**, **PORFILIO** and **KELLY**, Circuit Judges.

---

**SEYMOUR**, Circuit Judge.

Albertson Willie, Jr., appeals the district court's upward adjustment of his sentence for the rape of his daughter. For the reasons stated below, we affirm the ruling of the district court and uphold Mr. Willie's sentence.

**I.**

Mr. Willie was indicted by a grand jury on six counts of sexual abuse of his ten-year-old daughter. He pled guilty to one count of engaging in a sexual act with a child under the age of twelve in violation of 18 U.S.C. §§ 1153, 2241(c) and 2246(2)(A). Because the issues in this case are particularly dependent on the facts, we set forth those facts in some detail.[1]

At the time of the rape to which he pled guilty, Mr. Willie was thirty years old, 5'9" tall, and weighed 260 pounds. He resided with his common-law wife, Laura Leslie, in a one-room hogan within the boundaries of the Navajo Nation in Twin Lakes, New Mexico. Also living with Mr. Willie and Ms. Leslie were their four daughters, aged ten, eight, five, and two. The hogan had one bed, upon which Mr. Willie and Ms. Leslie slept, and two couches. The younger three daughters slept on one of the couches while the eldest daughter, the victim in this

---

[1]These facts are taken from the presentence report, which was adopted by the district court as its findings of fact.

case, slept alone on another couch. Ms. Leslie often worked outside the home in the evenings, which is when the sexual abuse most often took place.

On September 20, 1999, Ms. Leslie was at work and Mr. Willie was watching the children. The victim had already gone to sleep for the night. That night, as she frequently did, the victim shared a couch with her eight-year-old sister, believing that "dad won't come over to the couch and get me" if her sister were present. Rec., vol. II at 5. Mr. Willie turned off the lights and television, turned on the radio, and then went over to the couch where the victim was sleeping. He picked her up and carried her over to his bed. Mr. Willie then removed the victim's jeans, t-shirt, panties, and bra. He removed his own clothing, then lay next to her on the bed. He placed his finger on her vagina, then inside her vagina. He then digitally penetrated her anus and began to kiss her on the lips. He next penetrated her anus with his penis. Then he lay on his back, placed the victim on his lap and penetrated her with his penis.

The next day, the victim revealed the abuse to her paternal uncle and his common-law wife. Her aunt and uncle in turn told the victim's school counselor. The victim was taken that day to the Gallup Indian Medical Center for a full examination. During that examination, the victim informed the doctor that Mr. Willie had been abusing her for two years, since she was eight years old. She told the doctor that her father had penetrated her vaginally and anally with his penis

-3-

and fingers on many occasions and had also made her touch his penis.  The victim informed the doctor that her father hurt her when he committed these sexual acts.  She also stated that "her father hurt her legs and buttocks when he spanked her with a 'wire and pliers.'"  Rec. Vol. 2 at 5. The doctor found "definite signs of penetration" in her genitalia, but found no injuries or diseases.  *Id.*

The victim was interviewed by FBI agents the same day.  She advised the agents that Mr. Willie had told her not to tell her mother about the sexual abuse or "she would be spanked."  *Id.*  Mr. Willie warned the victim that if she told anyone about the abuse, she and her sisters would be taken away by Social Services.  The victim "stated that she sometimes cried when her father penetrated her."  *Id.* at 6.  When she told her father he was hurting her, he instructed her to "be quiet."  *Id.*  Her father told her not to cry as she would wake her sisters.  She told the agents that Mr. Willie hit her with a belt and a wire when he disciplined her.  The victim had not told her mother of the abuse because she feared being spanked and causing her parents to argue.  She further stated that she feared her father.

The victim's eight-year-old sister corroborated the ongoing abuse as well as the events of September 20.  On that night, she watched her father carry her sister to the bed, remove her clothing, remove his clothing, and lie on top of her sister.  On many occasions, she heard Mr. Willie instruct her sister to sit on his lap, and

saw her do so. Mr. Willie would tell the eight-year-old "to turn around and face the wall" while he was raping her sister. *Id.*

The district court sentenced Mr. Willie to 151 months in prison, followed by three years of supervised release. The base offense level for the underlying crime was 27. *See* U.S.S.G. § 2A3.1(a). The court then adjusted the sentence upward by four levels for the use of force in commission of the crime, pursuant to section 2A3.1(b)(1).[2] Mr. Willie's sentence was further increased by four levels because the victim was under the age of twelve. U.S.S.G. § 2A3.1(b)(2)(A). Finally, the district court enhanced Mr. Willie's sentence by two levels pursuant to section 2A3.1(b)(3)(A) because the victim was in his care, custody, or supervisory control at the time of the abuse. The court adjusted the sentence downward by two levels for acceptance of responsibility by the defendant and by one level for his cooperation with the investigation and prosecution of his case. As a result, the court found Mr. Willie's total offense level to be 34 and the required sentencing range between 151 and 188 months.

## II.

---

[2] U.S.S.G. § 2A3.1(b)(1) requires a four-level increase "[i]f the offense was committed by the means set forth in 18 U.S.C. § 2241(a) or (b)." Section 2241(a) criminalizes causing a person to engage in a sexual act "(1) by using force against that other person; or (2) by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping."

Mr. Willie asks us to hold that the district court erred in adjusting his sentence upward for the use of force in commission of the crime. He first argues that such adjustment constitutes impermissible double counting, since his sentence was also adjusted upward for the age of his victim. He also contends that even if the adjustment is not double counting, there is insufficient evidence to prove he used force in raping his daughter.

In reviewing a district court's sentencing decision, we examine the court's interpretation and application of the sentencing guidelines de novo. *United States v. Pappert*, 112 F.3d 1073, 1078 (10th Cir. 1997). We uphold the court's factual findings unless they are clearly erroneous. *United States v. Reyes-Pena*, 216 F.3d 1204, 1211 (10th Cir. 2000). We view the "[e]vidence underlying a district court's sentence . . . , and inferences drawn therefrom, in the light most favorable to the district court's determination." *United States v. Conley*, 131 F.3d 1387, 1389 (10th Cir. 1997).

## A.    Double Counting

Mr. Willie argues adjusting his sentence upward for both the age of the victim and the use of force is punishing the same conduct twice. He argues that because "a child never consensually participates in a sexual act with an adult," there is implicit force whenever an adult and a child engage in sexual activity.

Aplt. Br. at 11. Following this logic, he contends, it is unfair to punish a defendant both for having sex with a child and for using force in the commission of that sex act, since that force is inherent in the sex act. Mr. Willie maintains the two adjustments "serve identical purposes -- to penalize adults for sexually abusing children who are too young to understand the nature of the act and to resist it overtly." Aplt. Br. at 13. He thus urges this court to reverse the application of one of the enhancements to his sentence. We decline to do so.

In *United States v. Reyes-Pena*, we answered the question raised here by holding that the force enhancement and the age enhancement "serve distinct purposes, and aim at different harms." 216 F.3d at 1210. The age enhancement "punishes sexual contact with a child under the age of twelve . . . as such children are *incapable of giving effective legal consent*." *Id.* (emphasis added). The force enhancement, however, "punishes the actual use of force used to overbear the will of another in perpetrating aggravated sexual abuse." *Id. Reyes-Pena* was directed to precisely the argument made by Mr. Willie here; namely, that the two concepts "are always inextricably intertwined." *Id.* We noted that not all child sexual abuse involves actual physical force and that *some cases involve factually consensual sexual activity*. *Id.* (emphasis added). The force enhancement, therefore, is appropriate only where there is a lack of factual consent. The age

enhancement, on the other hand, is always appropriate when the victim is under twelve years old, because no child can give legal consent to a sexual act.[3]

Reyes-Pena directly controls this case. The enhancements for use of force and age of the child are not double counting where there is actual force used in the commission of the sexual abuse sufficient to justify the application of the force enhancement. Mr. Willie attempts to distinguish *Reyes-Pena* only by its facts, arguing Mr. Reyes-Pena used actual force while Mr. Willie did not. This brings us directly to Mr. Willie's second argument: that the facts of his case do not support an enhancement for the use of force under *Reyes-Pena*.

## B.    Use of Force

Mr. Willie argues he did not use force in the rape of his daughter within the meaning of "use of force" elucidated by this court in *Reyes-Pena*.

Mr. Reyes-Pena pled guilty to one count of aggravated sexual abuse of his ten-year-old stepdaughter. At the time of the abuse, Mr. Reyes-Pena was in his late twenties and weighed 190 pounds. Recognizing that consent is not a defense

---

[3]We note that "'[t]he Sentencing Commission plainly understands the concept of double counting and expressly forbids it where it is not intended.'" *United States v. Archdale*, 229 F.3d 861, 869 (9th Cir. 2000) (citation omitted). The Sentencing Guidelines contain no such express provision against double counting for sexual abuse. *See* U.S.S.G. § 2A3.1. In any event, we need not rely on the silence of the Guidelines since we find no double counting in this case.

to aggravated sexual abuse when the child is under twelve, we said in *Reyes-Pena* that the force enhancement "punishes the actual use of force used to overbear the will of another . . . . *In this way, the law recognizes the distinction between legal and factual consent*." 216 F.3d at 1210 (citing case in which eleven-year-old victim and defendant engaged in consensual sex) (emphasis added). We held there that the use of force enhancement was appropriate given the facts of the case, which included actual physical force.

Mr. Willie contends his case is different from *Reyes-Pena*. He rests his argument on the fact that while his daughter did not want to participate in the sex acts and "sought ways to dissuade her father" from the sexual abuse by, for example, sleeping with her sister, she "never physically struggled against her father or tried to push him away and escape the contact." Aplt. Br. at 15. He argues he never had to use physical force against his daughter because she did not physically resist him. Mr. Willie does not assert his daughter consented factually to the sexual abuse. Rather, his argument aims for a middle ground somewhere between factual consent and actual use of physical force. He maintains that while he used the force "inherent" in the act of child sexual abuse, he used no force beyond that. Thus, he says, the amount of force he used is covered by the enhancement for age of the child but is not covered by the force enhancement,

which seeks to punish force more severe than that used in the mere act of sexual abuse.

We reject this argument categorically. The enhancement for use of force, on its face, does not specify the level of force that must be used for the enhancement to be appropriate.[4] Our precedent in *Reyes-Pena* indicates that "force may be inferred by such facts as disparity in size between victim and assailant, or disparity in coercive power, such as that between an adult and a child." 216 F.3d at 1211. We assess this case with that standard in mind.

The facts here amply demonstrate that Mr. Willie used force in the rape of his daughter. He weighed 290 pounds and his daughter, by all indications, was an average-sized ten-year-old girl. He was her natural father and, as such, had obvious and inherent authority over her. The victim attempted to evade her father's abuse by asking her sister to sleep on the same couch with her in the hope

---

[4]Our sister circuits have found force sufficient to justify application of the enhancement in many varieties of child sex abuse cases. *See, e.g., United States v. Archdale*, 229 F.3d 861, 868 (9th Cir. 2000) (sufficient evidence of force where six-foot-tall, 200-pound stepfather "moved his twelve-year-old victim's head up and down on his penis, grabbed her hand above her head, and 'got on top of her'"); *United States v. Bordeaux*, 997 F.2d 419, 421 (8th Cir. 1993) (force enhancement appropriate where disparity in size between ten-year-old victim and 200-pound defendant was coupled with "threats of disclosure to the child's mother of the 'dirty book' found by the child"); *United States v. Fire Thunder*, 908 F.2d 272, 275 (8th Cir. 1990) (upholding force enhancement where defendant threatened seven-year-old stepdaughter with death of her father if she told anyone).

that her father would not "come over to the couch and get" her. Rec., vol. II at 5. Despite her efforts, Mr. Willie came to the couch where she was sleeping, picked her up, and carried her to his bed. The sexual abuse that occurred the night of September 20 took place in the context of a two-year history of abuse. During those two years, Mr. Willie threatened his daughter with removal from the home, threatened her with spanking, spanked her with a belt, spanked her with wire, and spanked her with pliers. The victim cried out from pain on several occasions when her father penetrated her, and told him he was hurting her when he raped her. The victim resisted -- physically, verbally, and emotionally -- her father's abuse.

Given this set of facts, we refuse to accept Mr. Willie's argument that because this child did not try to slide between the bed and the wall or push her father away on this one occasion, as did the child in *Reyes-Pena*, she did not sufficiently resist and her father therefore did not have to use physical force to overcome her resistance. A child victim of sexual abuse may manifest a physical resistance that is lesser or different in kind than that of an adult rape victim. Similarly, a "threat of harm sufficient to coerce or compel submission" may be quite different for a child victim than for an adult victim. *See, e.g., United States v. Bordeaux*, 997 F.2d 419, 420-21 (8th Cir. 1993) (finding use of force where defendant threatened to tell ten-year-old victim's mother "about a 'dirty book'

-11-

that she had found," coupled with weight disparity between victim and defendant). As we said in *Reyes-Pena*, "in a case involving the sexual abuse of a child, the guidelines provide the sentencing judge with the flexibility to apply a force enhancement depending on the facts." 216 F.3d at 1211. We believe that physically transporting his daughter from the zone of safety she attempted to create on the couch with her sister, when combined with the history of abuse and threats, is sufficient force to uphold the use-of-force enhancement. This conclusion is further strengthened by the disparity of coercive power and disparity in physical size between the victim and her father.

The district court is hereby **AFFIRMED.**