FILED
United States Court of Appeals
Tenth Circuit

June 6, 2014

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

　　　Plaintiff - Appellee,

v.

MICHAEL DARRELL MAYBERRY,

　　　Defendant - Appellant.

No. 13-7029
(E. D. Okla.)
(D.C. No. 6:12-CR-00045-JHP-1)

_____

ORDER AND JUDGMENT

_____

Before **KELLY**, **MURPHY**, and **HARTZ**, Circuit Judges.

_____

　　　Defendant Michael Mayberry challenges his sentencing enhancement under

USSG § 2K2.1(b)(6)(B) for pointing a firearm at a vehicle.  He argues that the

enhancement was improper because he acted in self-defense.  We affirm his sentence

because the district court did not clearly err when it found that he did not act in self-

defense.

## I.　　BACKGROUND

　　　Defendant was convicted by a jury in the United States District Court for the

Eastern District of Oklahoma on one count of being a felon in possession of a firearm.

*See* 18 U.S.C. § 922(g)(1).  The presentence investigation report (PSR) calculated that his

base offense level was 20 and that he should receive a four-level increase under USSG § K2.1(b)(6)(B) for using his firearm to shoot at a vehicle. The PSR also calculated his criminal-history category as III, resulting in a guideline sentencing range of 63 to 78 months' imprisonment. Defendant's single objection to the PSR was that he should not receive the four-level enhancement because he acted in self-defense. The PSR rejected the objection because (1) "The defendant's argument that he possessed the firearm in self-defense did not give rise to a jury instruction for self-defense during trial," and (2) "there were no casings, bullet holes or other evidence located in the area of the shooting that indicates the defendant was shot at first." R, Vol. 3 at 15.

Two witnesses at trial had observed the shooting incident. The first to testify was Joe Pierce, who was outside washing his car when he saw Defendant walking west down the sidewalk of Elizabeth Avenue in Muskogee. As Defendant approached the intersection of Elizabeth and 30th Street, Mr. Pierce saw a car slowly moving south on 30th Street toward the intersection. Although Mr. Pierce thought at first that it might hit Defendant as he crossed the intersection, it safely passed him. After the car was "a little ways from [Defendant]," Mr. Pierce heard someone in the car say, "[T]here he go right there," followed by gunfire. *Id.*, Vol. 2 at 70 (internal quotation marks omitted). When he heard the gunfire he looked at Defendant and saw "him come out with a gun from behind his back and turn shooting at the car and I heard the car shooting at him." *Id.* at 71. He estimated that the car was 30 to 40 feet past Defendant when he saw Defendant shooting. Defendant was "crouched down a little bit right there in the middle of the

2

street" and shooting behind his back. *Id.* at 72. As the car drove past Defendant it initially kept its slow pace, but it sped up when it got further away. Mr. Pierce heard at least six shots and testified that "I guess [Defendant] kept shooting until the vehicle was out of sight and then after that he headed out through some houses." *Id.* at 73. When asked whether he knew whether Defendant or someone in the vehicle shot first, he said, "That's what I—I don't know who shot first," *id.* at 75; and when asked whether he had "hear[d] shooting before this individual pulled the gun out of the back of their pants there," he replied, "I—I'm not sure. I think I heard gunfire—I don't know if he was retaliating or firing." *Id.* When questioned about his grand-jury testimony that Defendant had retaliated, he replied:

> Yeah, like I said, I don't know who fired first, but like I said, it could have been him retaliating or it could have been them. I don't know who fired first. All I know is I heard the gunshots.

*Id.* at 81.

The other witness was Willie Hopkins, a plumber who was working nearby. After hearing gun shots, he "[saw] a young man run out in the street and then . . . heard three more shots." *Id.* at 102. Defendant was the only one he saw shooting. When asked for more detail, he testified that Defendant "ran in the middle of 30th Street and turned around and started shooting." *Id.* at 103. After the shooting incident, Defendant ran away. Shortly thereafter, he came to the house where Mr. Hopkins was working and said, "They are shooting at me," to which Mr. Hopkins replied, "Man, you was the only one I seen shooting." *Id.* at 102 (internal quotation marks omitted).

To support its account of the shooting, the government introduced shell-casing evidence at trial. A police officer explained that he had found three .40 caliber shell casings in the general area of the intersection where witnesses had observed the shooting. The shell casings were spread out over about 30 or 40 feet in the intersection or just north of it. Two were Winchester casings and one was a Federal casing. The officer looked for casings for a block south of the intersection but found none. Defendant's gun, which was recovered from a house in the neighborhood, was a .40 caliber Smith & Wesson pistol; its magazine included rounds from different manufacturers.

At sentencing, the district court said:

> Based on the evidence and testimony presented at jury trial, the Court finds by a preponderance of the evidence that a claim of self defense and [1] defendant's discharge of a firearm is not supported by the facts in this case. Therefore, the Court finds that the defendant appropriately received a four level enhancement for possession of a firearm in connection with another felony offense pursuant to Section 2K2.1(b)(6). The defendant's objection is overruled.

*Id.* at 22–23. Defendant renewed his objection that the four-level enhancement "was not procedurally sound or substantively sound by virtue of the lack of facts and the lack of recognition of the self defense argument that we've made." *Id.* at 26. The court sentenced Defendant to 70 months' imprisonment, the middle of the guidelines range.

## II.     DISCUSSION

"At sentencing, the government must prove facts supporting a sentencing enhancement by a preponderance of the evidence." *United States v. Garcia*, 635 F.3d

---

[1] Perhaps the word "and" was supposed to be "in."

472, 478 (10th Cir. 2011). We "examine the court's interpretation and application of the sentencing guidelines de novo" and "uphold [its] factual findings unless they are clearly erroneous." *United States v. Willie*, 253 F.3d 1215, 1218 (10th Cir. 2001). "We view the evidence underlying a district court's sentence, and inferences drawn therefrom, in the light most favorable to the district court's determination." *Id.* (brackets, ellipsis, and internal quotation marks omitted). There is clear error only if the district court's "finding is simply not plausible or permissible in light of the entire record on appeal." *Garcia,* 635 F.3d at 478 (internal quotation marks omitted).

Section 2K2.1(b)(6)(B) directs that the defendant's offense level should be increased by four levels if the defendant "[u]sed or possessed any firearm or ammunition in connection with another felony offense." The enhancement applies "if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense." *Id.*, cmt. n.14(A). "Another felony offense" means "any Federal, state or local offense [other than some inapplicable exceptions] punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." *Id.*, cmt. n.14(C) (internal quotation marks omitted).

Defendant received a four-level enhancement under § 2K2.1(b)(6)(B) because he "used the firearm he possessed to shoot at a vehicle, which was charged as Feloniously Pointing a Firearm in Muskogee County, Oklahoma, District Court." R., Vol. 3 at 5. (The disposition of the state charge is not disclosed in the record.) Defendant concedes that "the offense of pointing a firearm meets the definition of 'another felony offense.'"

5

Aplt. Br. at 8 n.1.  He argues, however, that he did not commit that offense because he acted in self-defense. [2]  He points out, and the government acknowledges, that under Oklahoma law the offense of pointing a firearm "does not include pointing in defense of any person, one's home or property."  *Id.* at 9 (internal quotation marks omitted); *see* Okla. Stat. tit. 21, § 1289.16 (2011).

Defendant and the government agree that an Oklahoma jury instruction accurately defines self-defense:

> A person is justified in using deadly force in self-defense if that person reasonably believed that use of deadly force was necessary to protect himself/herself from imminent danger of death or great bodily harm.  Self-defense is a defense although the danger to life or personal security may not have been real, if a reasonable person, in the circumstances and from the viewpoint of the defendant, would reasonably have believed that he/she was in imminent danger of death or great bodily harm.

OUJI-CR § 8-46 (1991).  Self-defense is generally not available to the aggressor or a person who entered into mutual combat.  *See id.* CR § 8-50; *Jones v. State*, 201 P.3d 869, 886 (Okla. Crim. App. 2009).  And "if a party who was the attacker withdraws and the other party pursues more than is necessary to ensure her safety, the pursuing party can take on the status of attacker, and lose the right of self-defense."  *Allen v. State*, 871 P.2d 79, 92 (Okla. Crim. App. 1994).  Under Oklahoma law it is the government's burden to

---

[2] Defendant also argued in his briefs that the district court made a factual finding that he did not fire his gun.  But at oral argument Defendant's counsel conceded that his client fired the gun, suggesting that the district court misspoke.  It is obvious to us that the court misspoke or was misheard by the court reporter.

show that the defendant did not act in self-defense. *See Perez v. State*, 798 P.2d 639, 641 (Okla. Crim. App. 1990).

The evidence at trial is uncertain regarding who was the initial aggressor. Certainly, a reasonable factfinder could have inferred that the car's occupants fired first; but Mr. Hopkins testified that Defendant was the only one he saw shooting and Mr. Pierce testified that he did not know who shot first. And the shell casings support the view that no one in the car shot at Defendant: All the shell casings were compatible with Defendant's gun and none were found in the area from which the car's occupants would have been shooting. We cannot say that it would have been clear error for the district court to find that Defendant's first shots were not in self-defense. Moreover, Mr. Pierce testified that as the vehicle drove away, going south on 30th Street, Defendant "kept shooting until the vehicle was out of sight." R., Vol. 2 at 73. There was no testimony that any shots came from the vehicle during its retreat. The district court could have reasonably found that even if Defendant initially acted in self-defense, he became the aggressor by continuing to fire at the car after it had retreated and stopped returning fire. *See Smith v. State*, 197 P. 514, 516 (Okla. Crim. App. 1919) (defendant lost the right of self-defense if he pursued the aggressor and stabbed him with a knife after the aggressor withdrew).

## III.    CONCLUSION

We AFFIRM the district court's sentence.

ENTERED FOR THE COURT


Harris L Hartz
Circuit Judge