**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

RAMONA OBERA TUCKER,
            *Defendant-Appellant.*

No. 06-4122

Appeal from the United States District Court
for the District of South Carolina, at Greenville.
Henry M. Herlong, Jr., District Judge.
(6:05-cr-00416-HMH)

Argued: October 27, 2006

Decided: January 16, 2007

Before WILLIAMS, MICHAEL, and KING, Circuit Judges.

Vacated and remanded by published opinion. Judge Williams wrote
the opinion, in which Judge Michael and Judge King joined.

## COUNSEL

**ARGUED:** James Barlow Loggins, Assistant Federal Public
Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER,
Greenville, South Carolina, for Appellant. David Calhoun Stephens,
Assistant United States Attorney, OFFICE OF THE UNITED
STATES ATTORNEY, Greenville, South Carolina, for Appellee. **ON
BRIEF:** Reginald I. Lloyd, United States Attorney, Greenville, South
Carolina, for Appellee.

**OPINION**

WILLIAMS, Circuit Judge:

Ramona Obera Tucker appeals her sentence of 144 months' imprisonment for one count of bank fraud, in violation of 18 U.S.C.A. § 1344 (West 2000). She concedes that the district court's decision to impose a variance sentence was reasonable but argues that the extent of the variance was unreasonable. Because the district court did not provide compelling reasons to justify the extent of the variance and we conclude that the circumstances of this case do not warrant such an extreme variance, we vacate Tucker's sentence and remand for resentencing.

I.

A.

Tucker was indicted on one count of bank fraud, in violation of 18 U.S.C. § 1344. The indictment charged her with fraudulently and without authorization obtaining approximately $150,000 from Bank of America. On October 18, 2005, Tucker entered into a plea agreement with the Government, in which she stipulated that the loss amount for sentencing purposes was between $70,000 and $120,000. She pleaded guilty the same day.

Tucker's presentence report (PSR) sets forth the facts of this case, which are undisputed. The Melloul-Blamey Construction Company in Greenville, South Carolina hired Tucker as office manager in October 2000. She began embezzling funds beginning in June 2002, by setting up a company called Hummingbird Marketing, of which she was sole proprietor, and using it as a "dummy vendor." (J.A. at 56.) She would request that a company official at Melloul-Blamey write checks to Bank of America for the purpose of purchasing cashier checks to pay vendors. She then took the company checks to Bank of America, where she exchanged them for certified checks made out to her, to cash, or to Hummingbird Marketing and not to legitimate vendors. Tucker then used the money to pay her personal credit card bills and to make restitution payments to the United States Clerk of Court for

two previous fraud convictions. Tucker's prior convictions were for similar offenses, and she was still serving the term of supervised release from the second offense when she was arrested and charged in this case. A review of Bank of America records revealed that Tucker embezzled a total of $77,222.83 from her employer.

Consequently, the PSR calculated Tucker's total offense level under the Guidelines to be 13. *See* U.S. Sentencing Guidelines Manual § 2B1.1(a)(1), (b)(1)(E) (2004). The total offense level of 13, combined with her criminal history category of IV,[1] resulted in an advisory guidelines range of 24 to 30 months' imprisonment and three to five years' supervised release.

The PSR also indicated that Tucker had "a long history of psychiatric treatment for chronic depression and multiple suicide attempts" and that she "report[ed] experiencing symptoms of depression dating back to teenage years due to childhood abuse." (J.A. at 60.) She was diagnosed with major depressive disorder and an unspecified personality disorder. (J.A. at 61.)

B.

The district court conducted a sentencing hearing on January 18, 2006. Tucker was offered an opportunity to allocute but chose not to make a statement. Although her attorney argued for a sentence within the guidelines range, the district court, after considering the guide-

---

[1]Tucker's prior convictions resulted in a subtotal criminal history score of 6, which would have placed her in criminal history category III. *See* U.S. Sentencing Guidelines Manual ch. 5, pt. A (2004). One point, however, was added due to her having committed this offense less than two years after her release from custody, and two points were added due to her having committed this offense while on supervised release from previous sentences. *See* U.S. Sentencing Guidelines Manual § 4A1.1 cmt. n.4 (2004) ("Two points are added if the defendant committed any part of the instant offense . . . while under any criminal justice sentence, including . . . supervised release."). This resulted in a total of nine criminal history points, establishing Tucker's criminal history category of IV. *See* U.S. Sentencing Guidelines Manual Ch. 5 Pt. A (2004) (providing that 7, 8, or 9 criminal history points establish a criminal history category of IV).

lines factors and the factors set forth at 18 U.S.C.A. § 3553(a) (West 2000 & Supp. 2006), determined that an upward variance was warranted. The district court recognized that it was "required to consider a sentence sufficient but not greater than necessary to accomplish the purposes of sentencing" and stated that it had to "fashion a sentence which it feels will fit the crime and protect society." (J.A. at 37.)

While the district court considered all of the § 3553(a) factors, it found that the most significant factor in Tucker's case was the need "to protect the public from further crimes of the defendant." (J.A. at 38.) The district court then explained that "[t]he only way [it knew] to do that [was] to keep her away from society"; although the court was "not going to keep her away for the rest of her life," it intended to "fashion a sentence which will significantly keep her away from the public." (J.A. at 38.)

The district court also addressed one other factor at relative length, explaining that it "should consider 'the nature and circumstances of the offense and the history and characteristics of the defendant.'" (J.A. at 37-38.) The court indicated that the offense was serious, in that over $77,000 was embezzled in a manner characteristic of Tucker's previous crimes, and described her as "a dedicated embezzler and thief." (J.A. at 38.) In the words of the district court, "She's a dedicated thief and apparently she always will be." (J.A. at 37.) "[T]he record reflects in this case that she is an habitual thief, scheming thief. She gets out of jail . . . for stealing from her employers[,] . . . applies for jobs and gets access to the funds of the employer[, a]nd after a short period of time she starts embezzling significant funds . . . . And she does this over and over again. And I have no reason to think that it will not continue." (J.A. at 37.) The district court recognized that "she has suffered from depression and other problems," but stated that "there is nothing in her history that indicates that what she does as far as committing these offenses is not knowingly done and is not just the character that she is." (J.A. at 37.)

The district court noted the need to fashion a sentence that would "reflect the seriousness of the offense, . . . promote respect for the law[, ] provide just punishment for the offense," promote deterrence, and provide the defendant with needed training or medical care in the most effective manner. (J.A. at 38.) The district court did not, how-

ever, elaborate on these factors or indicate how the factors were better served by a variance sentence. The district court stated that although it could depart upward under the Guidelines to a 60 month sentence because Tucker's criminal history category did not adequately reflect the extent of her criminal past, a 60 month sentence "would not be appropriate." (J.A. at 39.) This statement did not include an explanation of how the district court arrived at the 60 month figure or why it found a 60 month sentence inappropriate. The district court ultimately imposed a variance sentence of 144 months, followed by a five year term of supervised release during which Tucker would pay restitution of $77,223.83 for this offense. The sentence also required Tucker to participate in a mental health treatment program and not to obtain employment in which she would have access to her employer's funds during the five year period of supervised release that will follow her term of imprisonment.

Tucker timely noted an appeal to this court. We have jurisdiction to hear this appeal pursuant to 18 U.S.C.A. § 3742(a) (West 2000) (providing for appellate jurisdiction over a "final sentence" entered by the district court) and 28 U.S.C.A. § 1291 (West 2006) (providing for appellate jurisdiction over "final decisions" of the district court).

II.

A.

We review the sentence imposed for reasonableness. *United States v. Booker*, 543 U.S. 220, 261 (2005). In determining whether a sentence was reasonable, we review the district court's legal conclusions de novo and its factual findings for clear error. *United States v. Hampton*, 441 F.3d 284, 287 (4th Cir. 2006). "Reasonableness review involves both procedural and substantive components." *United States v. Moreland*, 437 F.3d 424, 434 (4th Cir. 2006).

Post-*Booker*, a sentencing court must engage in a multi-step process that begins with correctly determining the defendant's Guideline range. *Moreland*, 437 F.3d 424 at 432. "Next, the court must determine whether a sentence within that range . . . serves the factors set forth in § 3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors." *Id.* (alterations in original) (internal

quotation marks omitted).[2] "In doing so, the district court should first

---

[2]18 U.S.C.A. § 3553(a) (West 2000 & Supp. 2006) provides that in determining the particular sentence to be imposed, the district court must consider,

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed —

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for —

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines —

(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

(B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments

look to whether a departure is appropriate based on the Guidelines Manual or relevant case law." *Id.* If it is, the court may depart, or if the "departure range still does not serve the factors set forth in § 3553(a), the court may then elect to impose a non-guideline sentence (a 'variance sentence')." *Id.* As part of this process, "[t]he district court must articulate the reasons for the sentence imposed, particularly explaining any departure or variance from the guideline range." *Id.*

Reviewing the reasonableness of the resulting sentence is a "complex and nuanced" task that "requir[es] us to consider the extent to which the sentence imposed by the district court comports with the various, and sometimes competing, goals of § 3553(a)." *Id.* at 433 (internal quotation marks omitted). "The reasonableness of a sentence ultimately will turn on the particular factors of each case." *Id.* We have previously explained that a "district court's job is not to impose a 'reasonable' sentence. Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of § 3553(a)[ ]. Reasonableness is the *appellate* standard of review in judging whether a district court has accomplished its task." *United States v. Davenport*, 445 F.3d 366, 370 (4th

---

have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28;

(5) any pertinent policy statement —

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28; and

(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

Cir. 2006) (quoting *United States v. Foreman*, 436 F.3d 638, 644 n.1 (6th Cir. 2006) (emphasis in original)). Ultimately,

> [T]he overarching standard of review for unreasonableness will not depend on whether we agree with the particular sentence selected, but whether the sentence was selected pursuant to a reasoned process in accordance with law, in which the court did not give excessive weight to any relevant factor, and which effected a fair and just result in light of the relevant facts and law.

*United States v. Green*, 436 F.3d 449, 457 (4th Cir. 2006) (internal citation omitted).

In reviewing a variance sentence, we must consider "whether the district court acted reasonably with respect to (1) the imposition of a variance sentence, and (2) the extent of the variance." *Moreland*, 437 F.3d at 434. "Generally, if the reasons justifying the variance are tied to § 3553(a) and are plausible, the sentence will be deemed reasonable. However, where the variance is a substantial one . . . we must more carefully scrutinize the reasoning offered by the district court in support of the sentence." *Id.* "The farther the court diverges from the advisory guideline range, the more compelling the reasons for the divergence must be." *Id.*

### B.

In reviewing Tucker's sentence, we are informed by our recent jurisprudence regarding variance sentences. We also turn to the *Booker* decision itself for guidance. *Booker* reflects the values underlying the Sixth Amendment by mandating individualized judgment through the requirement that "without the individual attention of a jury to find facts, a defendant cannot constitutionally be sentenced by a judge without discretion to consider all relevant factors under the sentencing statutes." *United States v. Cage*, 451 F.3d 585, 593 (10th Cir. 2006). The decision also "refus[es] to . . . nullify the entirety of Congress's purpose in passing the 1984 Sentencing Act that judicial discretion on sentencing should be limited by the decisions of a publicly accountable body, the Sentencing Commission." *Cage*, 451 F.3d at 593. *See also Booker*, 543 U.S. at 246 ("The . . . approach, which

we now adopt, would . . . make the Guidelines system advisory while maintaining a strong connection between the sentence imposed and the offender's real conduct — a connection important to the increased uniformity of sentencing that Congress intended its Guidelines system to achieve."). It is with these principles in mind that we review the reasonableness of Tucker's sentence.

In arguing that her sentence was unreasonable, Tucker relies primarily on our decisions in *Hampton* and *Davenport*. She contends that the district court arrived at a sentence that represents an increase of almost five times the top of the guideline range by (1) giving excessive weight to a single § 3553(a) factor — the need to protect the public from future crimes, and (2) giving too little weight to one aspect of another — her characteristics as a person who suffers from mental health problems due to childhood abuse. Tucker further argues that sufficiently compelling reasons do not exist to justify the extent of the variance imposed.

We turn first to Tucker's argument that the district court erred in finding that although all of the § 3553(a) factors applied to her, one, the need "to protect the public from further crimes of the defendant," was "[t]he most significant." (J.A. at 38.) We do not find fault with the district court's determination that one factor weighed more heavily than others in Tucker's case. The district court also considered other factors that weighed in favor of an upward variance, and Tucker herself concedes "that the district court's view of [her] risk of recidivism could support a sentence above that recommended by the guidelines." (Appellant's Br. at 19-20.) Furthermore, the district court did take into account Tucker's mental health problems. It was not unreasonable for the district court to find that because Tucker's depression did not drive her to embezzle money, it should not be accorded great weight as a mitigating factor. If sentencing courts are to have the discretion to make an individualized determination based on a consideration of all the relevant factors that *Booker* mandates, we cannot foreclose district courts from assigning certain factors more or less weight than others, as the circumstances of a particular case may dictate. This is not to suggest, however, that district courts have unbridled sentencing discretion. Sentencing courts remain obligated not to "give excessive weight to any relevant factor" and to impose a sentence "which effect[s] a fair and just result in light of the relevant

facts and law." *Green*, 436 F.3d at 457. And, "[t]he farther the court diverges from the advisory guideline range, the more compelling the reasons for the divergence must be." *Moreland*, 437 F.3d at 434.

We note that Tucker's case is distinguishable from *Hampton*, in which we concluded that a district court gave excessive weight to one factor where it "relied on (rather than merely mentioned) only one aspect of one § 3553(a) factor — Hampton's status as sole custodial parent of his two small children," and when no other sentencing factor weighed in favor of a significant downward variance. *Hampton*, 441 F.3d at 289. There, we noted that Hampton was behind in child support for his other children and that family responsibilities are a discouraged reason for a departure under the Guidelines. Consequently, his care for his children did not warrant the substantial variance granted Hampton (probation instead of 57 to 71 months' imprisonment). Because, after considering all the circumstances, we could discern from the record no other basis for a reduction of such magnitude (eliminating the defendant's entire advisory term of imprisonment under the Guidelines of at least 57 months in favor of probation), we concluded that Hampton's sentence was unreasonable. *Id.* at 289.

## C.

We next address whether the reasons articulated by the district court are sufficiently compelling to justify the extent of the variance. For the following reasons, we conclude that although Tucker's risk of recidivism could justify a variance sentence, the district court did not adequately justify the extent of the variance imposed.

In reaching this conclusion, we are informed by our decision in *Davenport*.[3] In *Davenport*, we held that a 120 month sentence that was more than three times the top of the defendant's advisory guideline range was unreasonable. There, the defendant was also a dedicated

---

[3]We note that the district court was without the benefit of our decisions in *United States v. Davenport*, 445 F.3d 366 (4th Cir. 2006), *United States v. Hampton*, 441 F.3d 284 (4th Cir. 2006), and *United States v. Moreland*, 437 F.3d 424 (4th Cir. 2006) when it sentenced Tucker, as those cases were decided after Tucker's proceedings in the district court were complete.

thief — he was involved in pickpocketing and credit card theft and had a substantial criminal history of similar conduct. 445 F.3d at 371-72. We held that while "[t]he district court reasonably concluded that a sentence above the advisory guideline range was warranted," *id.* at 371, as Davenport had double the number of criminal history points needed to place him in the highest criminal history category, and Davenport seemingly had acknowledged that his culpability was greater than he had admitted pursuant to the plea agreement, the circumstances were not so compelling as to "justify a sentence so far above the top of the advisory guideline range." *Id.* at 372.

Tucker's sentence represents a greater variance than the sentence held unreasonable in *Davenport*. It is longer in scope — a 114 month increase from the top of the advisory guidelines range as compared with Davenport's 83 month increase — and Tucker's sentence represents a greater deviation from the guidelines range — nearly five times the top of the applicable guidelines range as compared with approximately three times the top of that range. In both Tucker's case and in *Davenport*, however, the basis for the variance sentence is substantially the same — the risk of recidivism in a defendant with a strong history of engaging in similar criminal conduct who is seemingly undeterred by prior incarceration. Even taking into account the uncharged crimes that the district court found Tucker had committed, her criminal history remains substantially less extensive than that of Davenport, who had double the number of criminal history points necessary to place him in the highest criminal history category.[4]

In this case, the district court offered little explanation for its conclusion that a 144 month sentence was necessary to serve the goals of § 3553(a). Although the district court indicated that it could depart to a sentence of 60 months under the Guidelines, it did not explain the basis for this calculation. If the uncharged crimes that the district court found that Tucker committed would have given her enough

[4]Protecting unsuspecting members of society from a pickpocket and credit-card thief seemingly would present more difficulty than protecting potential victims from Tucker, who stole primarily from employers whose funds she was permitted to access, as a future employer presumably would have the opportunity to check her references before hiring her.

criminal history points to place her in the highest criminal history category, her total offense level of 13 would have given her a guidelines range of 33 to 41 months' imprisonment. *See* U.S. Sentencing Guidelines Manual ch. 5, pt. A (sentencing table). Moreover, the district court did not explain why a 60 month sentence was "[in]appropriate," (J.A. at 39), or why a 144 month sentence better served the goals of § 3553(a).

Furthermore, the district court indicated that a partial basis for the sentence imposed was that the crime was serious because $77,222.83 — the amount embezzled — represented a significant sum. To be sure, the amount Tucker stole constituted a large sum of money. It was, however, at the low end of the range necessary to give her the eight-level enhancement that she received under the Guidelines. *See* U.S. Sentencing Guidelines Manual § 2B1.1(b)(1)(E) (2004) (enhancement for loss to the victim of $70,000 - $120,000). To have received a 144 month sentence under the Guidelines, however, Tucker would have had to embezzle a minimum of $50,000,000, an amount almost 1300 times greater than the sum she embezzled.

Tucker's sentence represented a 480% increase over the high end of her guidelines range. The degree of this variance far exceeds that of other sentences that we and our sister circuits have determined were unreasonable. *See, e.g.*, *United States v. Curry*, 461 F.3d 452, 460-61 (4th Cir. 2006) (concluding that a downward variance of 70% was unreasonable in extent); *Moreland*, 437 F.3d at 436-37 (concluding that although a downward variance was warranted, the circumstances of the case were not sufficiently compelling to justify a two-thirds reduction from the bottom of the defendant's guidelines range); *United States v. McMannus*, 436 F.3d 871, 875 (8th Cir. 2006) (downward variances of 54% for one defendant and 58% for another were unreasonable). *But cf. United States v. Williams*, 435 F.3d 1350, 1355 (11th Cir. 2006) (per curiam) (affirming, as reasonable, a 52% downward variance where the district court had articulated appropriate reasons concerning the circumstances of the case). Having looked at these cases, we do not mean to suggest that reasonableness is determined by a strict mathematical comparison. In *Moreland*, for example, we referenced *United States v. Jordan*, 435 F.3d 693 (7th Cir. 2006), as a case involving "truly compelling circumstances justifying

the imposition of a sentence nearly twice the maximum of the advisory guideline range." *Moreland*, 437 F.3d at 437 n.10.

The circumstances of this case, however, are simply not so compelling as to justify a sentence nearly five times the maximum of the advisory guidelines range. Many of the bases articulated by the district court for the sentence imposed are contemplated by the Guidelines: Tucker's commission of this offense less than two years after her release from custody and during her period of supervised release from another offense increased her criminal history category from III to IV; the Guidelines contemplate departures for defendants whose criminal history is not adequately reflected by their criminal history score; and the amount of loss suffered represents an integral part of the calculation of the total offense level for the offense of conviction. And, as discussed above, the district court offered no compelling justification for why a 144 month sentence was necessary to protect society. Although the risk of recidivism could justify an upward variance, the extreme increase reflects an exercise of judicial discretion of the kind that the Sentencing Act was designed to avoid. In adopting the approach that it did, it is clear that the *Booker* Court sought to "maintain[ ] a strong connection between the sentence imposed and the offender's real conduct — a connection important to the increased uniformity of sentencing that Congress intended its Guidelines system to achieve." *Booker*, 543 U.S. at 246. In imposing an upward variance of such magnitude in large part due to its conclusion that Tucker was a "scheming thief" and "apparently always w[ould] be," (J.A. at 37), the district court failed to maintain a strong connection between the real conduct and the sentence imposed. Accordingly, we conclude that the extent of the upward variance was not reasonable in this case.

## III.

Because the extent of the upward variance imposed by the district court was unreasonable, we vacate Tucker's sentence and remand for resentencing.

*VACATED AND REMANDED*