*167 GREGORY, Circuit Judge,
concurring in the judgment:
Although I concur in the result reached by the majority, I write separately to encourage a more tempered overall approach to the substantive reasonableness analysis. While I recognize that Gall provides the district court with a tremendous amount of discretion, it is not limitless; our decision that a district court’s sentence is procedurally reasonable should not mean that a subsequent finding of substantive reasonableness is a fait accompli. Indeed, though deference to a district court’s sentencing decision is required, the words “abuse of discretion” [1] cannot be a legal incantation invoked by appellate courts to dispel meaningful substantive review of a district court’s sentence. While I agree that Evans’s exceptional criminal history and risk of recidivism justify the district court’s substantial variance, the majority’s reasoning could reasonably be extended to justify any sentence up to the statutory maximum of 15 years.
The “totality of the circumstances” substantive reasonableness calculus demands that we proceed beyond a formalistic review of whether the district court recited and reviewed the § 3553(a) factors and ensure that the sentence caters to the individual circumstances of a defendant, yet retains a semblance of consistency with similarly situated defendants. Gall v. United States, — U.S. —, 128 S.Ct. 586, 596-97, 169 L.Ed.2d 445 (2007). There is little doubt that these objectives can be, under certain circumstances, countervailing and irreconcilable. Despite this analytical tension, the Supreme Court wanted the reasonableness standard of review to “avoid excessive sentencing disparities,” United States v. Booker, 543 U.S. 220, 264, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), and “to iron out sentencing differences.” Id. at 263, 125 S.Ct. 738; see also, Gall, 128 S.Ct. at 604 (Alito, J., dissenting) (“Indeed, a major theme of the [Booker ] remedial opinion, as well as our decision last Term in [Rita v. United States, — U.S. —, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007) ], was that the post-Booker sentencing regime would still promote the Sentencing Reform Act’s goal of reducing sentencing disparities.”)[2] Thus, consistent sentencing remains a significant priority of the Court, and district courts should keep this in mind when sentencing, particularly when they choose to venture beyond the correctly calculated guideline sentence.
As with all sentences, a non-guideline sentence must be “sufficient, but not greater than necessary” to satisfy the pur *168 poses set forth in 18 U.S.C. § 3553(a)(2). Because the extent of the variance in this case is substantial — almost eight years above the guideline range — it is “uncontroversial that [such] a major departure should be supported by a more significant justification than a minor one.” Gall, 128 S.Ct. at 597. And as stated above, I am convinced that the district court’s reasoning justified its decision to significantly vary above the guideline sentence; however, I am troubled that there are few guideposts in the majority opinion to cabin the district court’s discretion in any significant manner or provide any inclination as to how we would overturn a sentence based on substantive reasonableness.
To be fair, the analysis underlying reversal on substantive reasonableness grounds in the post-Gall era is evolving. While I have closely studied the post-Booker Supreme Court triumvirate of Rita, Kimbrough v. United States, — U.S. —, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007), and Gall, I must conclude that the Court has left the specifics of how appellate courts are to conduct substantive reasonableness review, charitably speaking, unclear. Inevitably, as is the nature of appellate courts, vacuums of legal uncertainty left by the Supreme Court are quickly filled in a circuit by circuit manner, sometimes resulting in a grab bag of possible solutions.
For example, in United States v. Pugh, 515 F.3d 1179 (11th Cir.2008), the Eleventh Circuit vacated and remanded the district court’s non-custodial sentence of a defendant convicted of possessing child pornography for substantive unreasonableness. Specifically, the Eleventh Circuit held that the district court committed a “clear error of judgment”, id., at 1203 (internal quotation marks and citation omitted), by failing to weigh “the [§ 3553(a) ] factors in a manner that is at least loosely commensurate with their importance to the case, and in a way that achieves the purposes of sentencing stated in § 3553(a).” Id. (internal quotation marks and citation omitted).
In United States v. Cutler, 520 F.3d 136 (2d Cir.2008), a case with direct application to the facts in our case, the Second Circuit reviewed the sentence of a defendant convicted of “charges relating to extensive bank frauds [over $100 million] and tax frauds [$29 million].” Id. at 139. Despite a guideline range of 78-97 months for the defendant, the district court sentenced him to twelve months and one day, a sentence that the guidelines equate with losses of around $70,000. The Cutler court discussed its post-Gall approach to determining whether a sentence is substantively reasonable as follows:
Accordingly, ‘tak[ing] into account the totality of the circumstances, including the extent of any variance from the Guidelines range,’ in order to determine whether a sentence is substantively unreasonable, i.e., an abuse of discretion, Gall, 128 S.Ct. at 597, we look to see whether the sentencing court erred in interpreting any of the § 3553(a) factors or made any other error of law, whether it made any clear error in assessing the evidence, and whether its decision was beyond the outer limits of the range of decisions permitted by § 3553(a).
Id. at 157-58. The Second Circuit found the district court’s sentence to be substantively unreasonable because “[t]he implicit finding that a fraud causing losses of more than $100,000,000 is no more serious than one causing losses of little more than $70,000 reflects an erroneous interpretation of § 3553(a)(2)(A)’s requirement for punishment that is just and is antithetical to the need to promote the perception of *169 fair sentencing.” Id. at 161 (internal quotation marks and citation omitted).[3]
There can be little doubt that both the Eleventh Circuit and Second Circuit substantive reasonableness analysis focused on what amounted to a re-weighing of the facts in the context of § 3553(a). I agree with this approach. While the oft-stated aphorism that district courts are in the best position to make factual decisions and “judge their import under § 3553(a) in the individual case” Gall, 128 S.Ct. at 597 (internal quotation marks and citation omitted), is unassailable, I can see no way, as a practical matter, to review the substantive reasonableness of a sentence without assessing the district court’s rationale for the sentence and reviewing its application of the facts to the guidelines and § 3553(a).[4] Even if a district court reviews each of the § 3553(a) factors individually, its sentence is not inevitably reasonable. To conclude otherwise would make appellate review, in effect, a nullity.
In addition, the Second Circuit’s view that substantive review of a district court’s decision must include an analysis of whether “its decision was beyond the outer limits of the range of decisions permitted by § 3553(a),” Cutler, 520 F.3d at 158, is correct. Thus, in the context of this case, it is worth reviewing a recent post-Gall appellate decision involving financial fraud.[5] In United States v. Williams, 517 F.3d 801 (5th Cir.2008), a unanimous Fifth Circuit panel affirmed the district court’s decision to sentence a defendant convicted of federal conspiracy, fraud, money laundering, and criminal forfeiture to 172 months imprisonment, a sentence 75 months (six years and three months) greater than the maximum guideline sentence of 97 months. In sentencing the defendant, the district court in Williams reasoned that:
Based on all the factors of this case, the tremendous problems that it caused to the individuals, all the testimony that was presented in court, the fraud and the complexity of the fraud, the number of states and the number of individuals, and where these people were sought to in fact contribute to this scheme unwittingly. The only one who knew that this was a scheme were the ones putting this scheme together, and the lead person in that entire scheme was Mr. Williams.
Id. at 812. The district court found that at least 297 people suffered as a result of the defendant’s scheme and the defendant showed no remorse during sentencing despite his role as the ring leader. United States v. Williams, 101 Fed.Appx. 435, 437 (5th Cir.2004). The district court also ordered restitution in the amount of $2,995,645.20. Comparing these facts to the instant case, Evans’s actions cost 22 businesses in North Carolina, South Car *170 olina, and Virginia a total of' $13,634.89. The district court ordered Evans to pay these victims $11,375.14 in restitution.
In addition, unlike the majority, I find it appropriate to review pre-Gall caselaw from the Fourth Circuit that is relevant to this case. In United States v. Tucker, 473 F.3d 556, 564 (4th Cir.2007), we held that a district court’s variance of approximately five times over the top of the guidelines range was impermissible. Tucker pled guilty to one count of bank fraud, in which the bank lost $70,000-$120,000. According to the PSR, Tucker’s offense level was 13, which combined with her criminal history category of IV, provided for a guidelines range of 24-30 months. The district court chose to sentence Tucker to 144 months in prison because of the need to protect the public from further crimes of the defendant, id., at 559, the nature of the offense, and the history and characteristics of the defendant. Specifically, the district court found that Tucker, like Evans, was a “dedicated thief and apparently she always will be” and “she is an [sic] habitual thief, scheming thief.” Id. (internal quotation marks omitted).
The facts here can be readily distinguished from those in Williams and Tucker. For example, Evans, in addition to his lengthy criminal history in the financial fraud area, was guilty of assaulting a female on two separate occasions. Nevertheless, while the variance in this case was justified, we must ensure that the delicate balance between consistency and individualizing sentences does not result in a myriad of inconsistent and intellectually incompatible sentences. In order to prevent a veritable hodgepodge of sentencing decisions, and to “secure nationwide consistency,” the federal sentencing guidelines must remain a central tenet of the sentencing calculus since they are “the starting point and the initial benchmark” for all sentencings. Gall, 128 S.Ct. at 596.
Overall, in the instant case, the district court’s fourteen level departure and a guideline range of 100-125 months resulted in a sentence of 125 months that was sufficient but not greater than necessary to comply with the purposes of § 3553(a)(2). While I concur in the result reached by the majority, I think it is necessary to urge the Court to maintain prudent bearings as it navigates the murky waters of substantive reasonableness. We must guard against the possibility that appellate review will become limited to “a mere formality, used by busy appellate judges only to ensure that busy district judges say all the right things when they explain how they have exercised their newly restored discretion^]” Booker, 543 U.S. at 313, 125 S.Ct. 738 (Scalia, J., dissenting). For our review of substantive reasonableness to have any teeth, our analysis must take place at a level that does not intrude upon the district court’s discretion yet still provides for a meaningful review of the district court’s sentence. Walking this tightrope requires deftness on our part for we must take into account the facts underlying the district court’s decision, and to a certain extent, determine whether the district court properly weighed the underlying facts. In addition, we must review the sentence’s consistency (or lack thereof) with similarly situated defendants.[6] I believe the application of such a cohesive and consistent analytical structure will prove to be instructive for all parties involved in the sentencing process.

. The abuse of discretion standard itself is of limited use. Indeed, as Judge Friendly once observed, "[t]here are a half dozen different definitions of abuse of discretion, ranging from ones that would require the appellate court to come close to finding that the trial court had taken leave of its senses to others which differ from the definition of error by only the slightest nuance, with numerous variations between the extremes.” Henry J. Friendly, Indiscretion About Discretion, 31 Emory L.J. 747, 763 (1982) (internal quotation marks omitted).

. Nevertheless, the Booker Court was hardly unaware of the potential for widely divergent and unprincipled sentencing among the district courts. While the majority in Booker dismissed such concerns by holding that appellate courts have had years of experience with the unreasonableness standard, Justice Scalia forcefully made the point that "no one knows — and perhaps no one is meant to know — how advisory Guidelines and unreasonableness review will function in practice.” Booker, 543 U.S. at 311, 125 S.Ct. 738 (Scalia, J., dissenting) (internal quotation marks omitted). Justice Scalia, in my view, presciently observed that the unreasonableness standard of review will "produce a discordant symphony of different standards, varying from court to court and judge to judge ...” Id. at 312, 125 S.Ct. 738 (internal quotation marks omitted).

. Furthermore, the Second Circuit stated that "our review of the record persuades us that the district court erred by disregarding the Guidelines provision addressing a defendant’s culpability for jointly conducted activity, by exceeding its departure authority, and by misinterpreting certain of the § 3553(a) factors. In addition, certain of the court’s findings are clearly erroneous, and certain of its rationales are detrimental to the perception of fair sentencing.” Id. at 158 (internal quotation marks and citation omitted).

. As the district court in this case clearly set out "a short clear written statement or a reasoned statement from the bench to support its departure,” United States v. Rusher, 966 F.2d 868, 882 (4th Cir.1992) (internal quotation marks and citation omitted), I agree with its decision to depart upward by fourteen levels.

.Unfortunately, due to the limited time that has passed since Gall, there are a scant number of cases that involve an appellate court considering the substantive reasonableness of a sentence involving financial fraud. See, e.g., Cutler.

. Of course, an appellate court’s disagreement with the length of a sentence is not enough, on its own, to reverse a district court on the basis of substantive reasonableness. Gall, 128 S.Ct. at 597.