**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 19a0252n.06

**Case No. 18-3141**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
May 10, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff-Appellee,* | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| DAVIAN WARREN, | ) | DISTRICT OF OHIO |
| | ) | |
| *Defendant-Appellant.* | ) | OPINION |

BEFORE:     COLE, Chief Judge; BATCHELDER and DONALD, Circuit Judges.

COLE, Chief Judge.   At Davian Warren's sentencing hearing, both Warren and the government sought a 51-to-63-month sentence—a term that was recommended in Warren's pre-sentence report and that fell within the applicable Sentencing Guidelines range.   Instead, the district court imposed the statutory maximum of 120 months' imprisonment.   Warren challenges his sentence as substantively unreasonable, arguing that the district court's explanation for its upward variance does not justify doubling the Guidelines-recommended sentence and imposing the statutory maximum.   We agree, vacate Warren's sentence, and remand for resentencing.

I.

On April 4, 2017, Warren was indicted for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).   Warren entered a guilty plea on October 2, 2017.   Thereafter, Warren's probation officer filed a pre-sentence investigation report ("PSR") with the district court, which concluded that, under the U.S. Sentencing Guidelines Manual (the "Guidelines"), Warren's offense level was 17 and his criminal history category was VI.   Thus, the probation officer concluded that, although the statutory maximum was 120 months' imprisonment, the Guidelines-

recommended range was between 51 and 63 months' imprisonment. The probation officer also did not identify "any factors as possible grounds for a departure from the applicable sentencing guideline provisions" in the PSR. (PSR, R. 38, PageID 165.)

While incarcerated and awaiting sentencing, Warren and his brother had an altercation that left Warren's brother badly injured. The district court addressed the altercation at Warren's plea hearing, stating that Warren's sentence for possession of a firearm could be "ordered to be served consecutive or concurrent to any other sentence that might be imposed arising out of that incident in prison." (Plea Hr'g, R. 45, PageID 231–32.) At Warren's first sentencing hearing, the district court again discussed the altercation and the impact it might have on Warren's sentence, and it continued the sentencing hearing to a later date, in hopes that the Mahoning County prosecutor's office would complete its investigation into the altercation before the court proceeded with sentencing. Mahoning County prosecutors subsequently informed the parties that they did not intend to charge Warren in connection with the altercation, noting that "the jury may view [the altercation] as a mutual combat situation." (Second Sentencing Hr'g, R. 47, PageID 261–62.)

The district court began the second sentencing hearing by discussing the Guidelines recommendation as described in the PSR. The court asked both parties if they had any objections to the range of 51 to 63 months' imprisonment. Neither did. At the sentencing hearing, the government recommended "a sentence at the highest end of the advisory guideline range." (*Id.* at PageID 264.) Both Warren and his counsel made statements on Warren's behalf, requesting a within-Guidelines sentence as well.

After Warren finished his statement, the district court asked if he had "any comment about the situation in which you left your brother?" (*Id.* at PageID 260–61.) Warren's counsel advised him not to respond because his answer could be used against him if the prosecutor's office later decided to go forward with the charge. The court responded that, "whatever may have been the circumstance, however -- whoever precipitated it, whoever caused it, we do know that this is a violent confrontation with terrible consequences, which, again, speaks to the defendant's prior history in terms of his violence [sic] nature." (*Id.*) Later in the sentencing hearing, the court addressed the altercation again, saying: "According to at least information provided to the court, the defendant assaulted his brother, and I when say assaulted, there was an altercation of some sort. . . . The defendant has not been charged with any conduct related to that offense; however,

should the defendant -- should the brother pass away, who knows what the circumstances will be." (*Id.* at PageID 266–67.) But the court then stated:

> Even without -- I will just note and strongly make it clear for the record, even without that more than tragic circumstance, is [sic] this defendant's record warrants an upward variance for the reasons we will discuss in a moment. Even without that occurrence, which is severe in nature, that action and that circumstance only serves to in my view confirm the fact that this defendant is a very violent offender and needs to be removed unfortunately from society for an extremely long period of time.

(*Id.*)

The court next turned to Warren's history and characteristics in line with 18 U.S.C. § 3553(a)(1). It described his criminal history in detail, noting that his 11 prior offenses included carrying a concealed weapon, fleeing from police, safecracking and breaking and entering, attempted felonious assault, discharge of a firearm on prohibited premises, and having a weapon under disability. The record also noted Warren's convictions involved discharging his weapon at a total of two people and one vehicle. The court concluded:

> He is a high risk offender. He's an individual that must be deterred. 51 to 63 months mean, literally considering the danger this individual poses to the community, is nowhere in my view close to what is required.
>
> The statutory penalty of ten years is the statutory maximum, and the maximum in this case is more than clearly justified for the reasons I've just stated. So pursuant to the Sentencing Reform Act of 1984, and 18, United States Code, 3553(a), it will be the judgment of the court that the defendant is committed to the custody of the Bureau of Prisons for the statutory maximum of 120 months, the ten years.
>
> All those reasons -- I acknowledge it is double the advisory guidelines. In this instance, the guidelines are nowhere sufficient, but not greater than necessary. They are not sufficient by virtue of the violence [sic] nature of this defendant, his willingness, his continued willingness to use guns and to fire them, wounding individuals, attempting to wound individuals, and it is, again, someone that has to be removed from our community to protect the community.

(*Id.* at PageID 273–74.) Warren objected to the upward variance, and the court responded:

> I'll simply ratify what I've said earlier. I think this defendant's record speaks for itself, the use of the firearms, the continued use of the firearms, his apparently being totally undeterred by the earlier sentences that have been imposed and the fact that his criminal history is conduct that has occurred over such a continuing period of time, from literally -- there's not been any period of time, except when he's been incarcerated, that he has not been committing some sort of criminal offense. As

I've indicated, the serious nature of his use of firearms, and I think it's worthy of note, it appears that most of this conduct is occurring in a . . . very specific area inside Cleveland, Ohio, communities that are wracked with violence, and those communities deserve to be protected from individuals like this defendant, who's roaming the streets with guns, willing to use them. Hopefully the ten years will at least allow some in that community to live safely without someone willing to possess and use firearms.

(*Id.* at PageID 276–77.)

II.

We review the substantive reasonableness of a sentence for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51, 68 (2007). "An abuse of discretion is established where the reviewing court is left with a definite and firm conviction that the district court committed a clear error of judgment." *Coach, Inc. v. Goodfellow*, 717 F.3d 498, 505 (6th Cir. 2013).

Warren challenges the substantive reasonableness of his sentence on two grounds. First, he argues that the altercation with his brother was an impermissible factor in determining the appropriate sentence for his firearms offense. Even if relying on uncharged, unrelated conduct would not have justified the variance at issue, *see, e.g.*, *Blakely v. Washington*, 542 U.S. 296, 306–07 (2004); *United States v. Allen*, 488 F.3d 1244, 1259–62 (10th Cir. 2007); *United States v. Chandler*, No. 15-20246, 2018 WL 618737, at *3 (E.D. Mich. Jan. 30, 2018), the district court noted that the upward variance was warranted "even without" considering the altercation. (*See* R. 47, PageID 266–67.) Under an abuse of discretion standard, we cannot find that the district court erred in referencing the altercation when it explicitly stated that the "defendant's record warrants an upward variance" based on the remaining factors that the court addressed. (*Id.*)

Thus, we turn to Warren's second argument: that, even if the district court did not consider the altercation with his brother, his sentence is still substantively unreasonable because the remaining reasons addressed by the court failed to justify the size of the variance at issue. "For a sentence to be substantively reasonable, it must be proportionate to the seriousness of the circumstances of the offense and offender, and sufficient but not greater than necessary, to comply with the purposes of § 3553(a)." *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008) (internal quotation marks omitted). A "sentence may be considered substantively unreasonable when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors,

fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008).

The "Guidelines range represents the starting point for substantive-reasonableness review because it is one of the § 3553(a) factors and because the Guidelines purport to take into consideration most, if not all, of the other § 3553(a) factors." *United States v. Haj-Hamed*, 549 F.3d 1020, 1025 (6th Cir. 2008); *see also Kimbrough v. United States*, 552 U.S. 85, 109 (2007) ("[I]n the ordinary case, the Commission's recommendation of a sentencing range will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." (internal quotation marks omitted)). Even when a district court exercises its discretion to diverge from the Guidelines-recommended sentence, this approximation is important, because "one of the principal functions of the Sentencing Reform Act of 1984 was to eliminate 'unwarranted sentenc[ing] disparities among defendants with similar records who have been found guilty of similar conduct.'" *United States v. Poynter*, 495 F.3d 349, 352 (6th Cir. 2007) (quoting 18 U.S.C. § 3553(a)(6)). Appellate courts are tasked with balancing this need to "iron out sentencing differences" with appropriate deference to district courts. *United States v. Booker*, 543 U.S. 220, 263 (2005).

Unlike sentences within the Guidelines-recommended range, sentences that deviate from the Guidelines are afforded no presumption of reasonableness. *United States v. Herrera-Zuniga*, 571 F.3d 568, 582 (6th Cir. 2009). In imposing a sentence outside the Guidelines range, district courts must "consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50; *United States v. Tristan-Madrigal*, 601 F.3d 629, 633 (6th Cir. 2010). And "the greater the district court's variance, the more compelling the evidence must be." *United States v. Stall*, 581 F.3d 276, 281–82 (6th Cir. 2009).

Warren's second argument focuses on whether the district court's justification for imposing the greatest possible variance was sufficiently compelling. In selecting a sentence, the district court engaged in a thorough discussion of several factors set forth in 18 U.S.C. § 3553(a), including "the nature and circumstances of the offense and the history and characteristics of the defendant," § 3553(a)(1); "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to

provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;" § 3553(a)(2); "the kinds of sentences available," § 3553(a)(3); and "the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the [Guidelines]," § 3553(a)(4). In particular, the court placed substantial emphasis on Warren's history and characteristics, offering an extensive discussion of his criminal record and the details of his prior offenses.

But in addressing "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" as required by § 3553(a)(6), the district court acknowledged that there was "definitely a disparity between this defendant's sentence and that of others," and the only reason the court gave for that disparity was Warren's criminal record. (R. 47, PageID 268.) As Warren notes, his criminal history was already incorporated into the Guidelines-recommended sentence. (Appellant Br. 21–22 (arguing that, because his "criminal record was fully accounted for in the guidelines," the district court's reliance on his prior offenses to impose the highest possible variance resulted in the imposition of "a sentence far in excess [of] that which was necessary to meet the statutory purposes of sentencing and should be vacated").) We have reasoned that, because the Guidelines already account for a defendant's criminal history, imposing an extreme variance based on that same criminal history is inconsistent with "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" under 18 U.S.C. § 3553(a)(6). *United States v. Bistline*, 665 F.3d 758, 767 (6th Cir. 2012); *see also United States v. Borho*, 485 F.3d 904, 912–13 (6th Cir. 2007) (finding that a factor "already taken into account in calculating [the defendant's] applicable Guidelines range" does not justify a large variance from the Guidelines-recommended sentence).

As we noted in *Bistline*, "[w]e do not mean to imply that only a sentence in or around that range will avoid disparities with other similar defendants. But we do not see how the sentence imposed here avoids them." 665 F.3d at 767. Because the district court's only discussion of whether the selected sentence avoids unwarranted sentencing disparities hinges on criminal history factors addressed by the Guidelines, the district court insufficiently distinguished Warren from other offenders in the same criminal history category. Not all repeat offenders deserve the statutory

maximum, as evidenced by the Guidelines-proposed range and Congress's decision to set a range at all. *Poynter*, 495 F.3d at 354. By "relying on a problem common to all" defendants within the same criminal history category as Warren—that is, that they have an extensive criminal history— the district court did not give a sufficiently compelling reason to justify imposing the greatest possible deviation from the Guidelines-recommended sentence in this case. *Id.*; *see also United States v. Tucker*, 473 F.3d 556, 564–65 (4th Cir. 2007) ("Many of the bases articulated by the district court for the sentence imposed are contemplated by the Guidelines[.] Although the risk of recidivism could justify an upward variance, the extreme increase reflects an exercise of judicial discretion of the kind that the Sentencing Act was designed to avoid."). Thus, reliance on Warren's criminal history without a fuller consideration of whether the selected sentence avoids unwarranted sentencing disparities was insufficient to justify such a stark departure from the Guidelines.

The fact that the sentence did not exceed the statutory maximum does not satisfy concerns about unwarranted sentence disparities. *Poynter*, 495 F.3d at 354–55. We held in *Poynter* that, "[w]hile the statutory maximum eliminates any risk of disparity caused by sentences *above* [the maximum term], that maximum does little to diminish disparities for individuals who receive (or should receive) sentences below [the maximum term]." *Id.* at 355 (citing *Booker*, 543 U.S. at 253 ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity.")). Although we recognize the discretion afforded to district judges in determining a defendant's sentence, we have also acknowledged that district courts cannot "pick any sentence within the applicable statutory sentencing range that strikes their fancy." *Id.* at 352 (quoting *United States v. Sriram*, 482 F.3d 956, 962 (7th Cir. 2007)).

To be clear, we have declined to impose a "bright-line rule" that district courts cannot rely on factors accounted for by the Guidelines in imposing a variance, *Tristan-Madrigal*, 601 F.3d at 636 n.1, and we have affirmed the imposition of sentences that deviate from the Guidelines to some degree based upon a defendant's criminal history, *e.g.*, *United States v. Villarreal*, 609 F. App'x 847, 850 (6th Cir. 2015) (finding that serious criminal history "warranted a slight upward variance"); *United States v. Lanning*, 633 F.3d 469, 476 (6th Cir. 2011) (finding that serious criminal history warranted 42-month sentence, which was "well above [the defendant's] advisory Guidelines range of 18 to 24 months, though considerably below the statutory maximum sentence of 60 months"). But we have also made plain that "the greater the district court's variance, the

more compelling the evidence must be." *Stall*, 581 F.3d at 281–82. Even granting that *some* variance based on Warren's criminal history was justified, we are left with the definite and firm conviction that, in this case, the trial court imposed a sentence that was "greater than necessary" in roughly *doubling* the recommended sentence and imposing the statutory maximum based on Warren's criminal history without a fuller consideration of whether such a sentence avoids unwarranted sentencing disparities. *Vowell*, 516 F.3d at 512.

On the record before us, the district court failed to provide a sufficiently compelling justification to impose the greatest possible upward variance under the statute. *See Gall*, 552 U.S. at 50; *Stall*, 581 F.3d at 281–82. We are "confident that on remand, the district court can fashion a sentence that reflects [the defendant's] actual crime, that takes into account his dangerousness to the community, and that is sufficient, but not greater than necessary, to achieve the purposes of sentencing." *Allen*, 488 F.3d at 1262.

III.

Accordingly, we vacate Warren's sentence and remand for resentencing in accordance with this opinion.

ALICE M. BATCHELDER, Circuit Judge, dissenting. I respectfully dissent. The majority holds that, "Because the district court's only discussion of whether the selected sentence avoids unwarranted sentencing disparities hinges on criminal history factors addressed by the Guidelines, the district court insufficiently distinguished Warren from other offenders in the same criminal history category," and thus the district court's reasoning was "insufficient to justify such a stark departure from the Guidelines." The majority also characterizes Warren's criminal record as "the only reason" offered by the district court for the sentencing disparity. I must disagree. The district court's extensive discussion of its reasoning for an upward variance did not only "hinge on criminal history factors," and in my view the district court did sufficiently explain how Warren was different "from other offenders in the same criminal category." The district court's reasoning for imposing an above-Guidelines sentence for Warren was clear: the danger to the community posed by the unique combination of his refusal to be "deterred" by prior sentences and his "violent nature."

First, Warren's refusal to be deterred. The district court explained at sentencing how Warren had accrued a stunning eleven felony convictions over nine years, starting at age 18, and that "there's not been any period of time, except when he's been incarcerated, that he has not been committing some sort of criminal offense." In fact, over those nine years, Warren had been held in some form of custody (jail, correctional facility, prison, etc.) ten separate times for a cumulative total of at least seven years. The district court found that, "[t]he defendant has not been deterred" by his prior sentences and "[h]e is a high risk offender. He's an individual that must be deterred."

Second, Warren's violent nature. At the sentencing hearing, the district court chronicled the defendant's criminal past, highlighting the defendant's willingness not only to use force and violence, but actually to discharge firearms at people (twice) and a vehicle (once). For example, Warren's first offense came less than two weeks after his eighteenth birthday: concealing and carrying a loaded firearm while fleeing from the scene of a traffic stop.[1] The next year he destroyed private property, forcing his way into a business to rob a vault.[2] Two years later he held one victim at gunpoint while he shot at another one.[3] But he didn't just shoot to intimidate: he shot the victim point blank with a shotgun. The victim was hospitalized and could have died. Two years after

---

[1] One count of Carrying Concealed Weapons.
[2] One count of Breaking and Entering and one count of Safecracking.
[3] Two counts of Attempted Felonious Assault with a Firearm.

that he discharged a firearm at a vehicle carrying *his own family members*: two sisters and a niece.[4] By any metric, this is ample evidence of a person with a violent nature.

The district court concluded that this defendant, unlike other offenders in the same category, posed a unique threat to the safety of the community:

> "51 to 63 months, [I] mean, literally considering the danger this individual poses to the community, is nowhere in my view close to what is required . . . All those reasons—I acknowledge it is double the advisory guidelines. In this instance, the guidelines are nowhere sufficient, but not greater than necessary. They are not sufficient by virtue of the violent nature of this defendant, his willingness, his continued willingness to use guns and to fire them, wounding individuals, attempting to wound individuals, and it is again, someone that has to be removed from our community to protect the community."

Considering that the instant crime was Warren's yet again illegally being in possession of a firearm, the district court held that "adequate deterrence and protecting the public [was the] first and foremost [sentencing factor] as it comes to decisions to impose a sentence in this matter."

The Guidelines incorporate a defendant's individual criminal history convictions to recommend a sentence range. But the recommended range does not account for the manner in which those crimes were committed. Nor does the recommended range account for the periods of time between convictions that indicate the effectiveness of sentences. These were the two factors the district court explicitly relied on most heavily in imposing Warren's above-Guidelines sentence. The district court found that the manner in which Warren committed his offenses over such a short time period particularly distinguished Warren from other offenders in the same category. To wit: not all Attempted Felonious Assault convictions include nearly killing a man; not all offenders care so little for human life that their Firearm Discharge convictions are for shooting at defenseless women leaving a property; and not all persons who have eleven felony convictions accrue them in a mere nine years. Those factors are not simply "criminal history factors" that were "already incorporated" into the Guidelines range.

One purpose of our substantive-reasonableness review is to guard against sentences that "double count" factors that are already incorporated into the Guidelines range. As the majority correctly points out, that double counting is inconsistent with "the need to avoid unwarranted

---

[4] One count of Discharge of a Firearm on or Near Prohibited Premises.

sentence disparities among defendants with similar records who have been found guilty of similar conduct" under 18 U.S.C. § 3553(a)(6). *United States v. Bistline*, 665 F.3d 758, 767 (6th Cir. 2012). But it is clear to me that the district court did not double count factors for Warren's sentence. Rather, the district court offered a sufficiently compelling explanation of how Warren was distinguishable from other offenders in his category such that a departure from the Guidelines range was not only justified, but necessary to protect the public. If, as the majority seems to believe, district courts lack the discretion to depart from the Guidelines range to impose the maximum statutory sentence for this type of undeterred, violent criminal, then the majority is effectively treating the Guidelines as mandatory. But the Supreme Court long since made it explicit: the Guidelines are not mandatory. *See United States v. Booker*, 543 U.S. 220, 263–65 (2005).

I would affirm.