**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 28 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

vs.

JOSEPH FELIX REYES PENA,

      Defendant - Appellant.

No. 99-2316

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. CR-98-821-1-LH)

Gregory J. Fouratt, Assistant United States Attorney (and Norman C. Bay, United States Attorney, with him on the briefs), Albuquerque, New Mexico, for Plaintiff - Appellee.

Alonzo J. Padilla, Assistant Federal Public Defender, Albuquerque, New Mexico, for Defendant - Appellant.

Before **KELLY**, **McKAY**, and **LUCERO**, Circuit Judges.

**KELLY**, Circuit Judge.

      Defendant-Appellant, Joseph Felix Reyes Pena, appeals from his sentence.

He pleaded guilty to two counts of aggravated sexual abuse of a child, 18 U.S.C.

§§ 2241(c), 2246(2)(c) and 1153.  He was sentenced to a term of imprisonment of

210 months, followed by a 5 year period of supervised release, ordered to pay a $200 fine, and to make payment of $186 for restitution. On appeal, Mr. Pena argues (1) that the district court impermissibly engaged in "double counting" by enhancing his sentence both for the use of force, U.S.S.G. § 2A3.1(b)(1), and for the victim's youth, U.S.S.G. § 2A3.1(b)(2)(A); (2) there was insufficient evidence to support an enhancement for the use of force; and (3) the government breached an implied term of the plea agreement by pursuing a sentencing enhancement for the use of force. Our jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and we affirm.

Background

Given the argument that there is insufficient evidence to support the sentencing enhancement for use of force, it is necessary to recite in some detail the facts surrounding Mr. Pena's persistent sexual abuse of his stepdaughter. In view of the argument that the government breached the plea agreement, it is likewise necessary to set forth the facts surrounding the formation and execution of that agreement. Other relevant facts will be discussed as necessary.

During the time period in which this abuse occurred, Mr. Pena was in his late twenties, weighing 190 pounds. His victim was 10 years old and weighed 70 pounds. According to the presentence report, in one incident, the victim

attempted to evade Mr. Pena by sliding "into the crack of her bed," whereupon Mr. Pena "grabbed her arm and made her lay next to him on the bed" and proceeded to assault her vagina digitally. See IV R., P.S.R. at ¶ 11. On another occasion, the victim noted that Mr. Pena anally penetrated her despite her strong verbal protestations. Mr. Pena ignored her refusal, stating "'[i]t is almost through'" and "then pushed harder." IV R., P.S.R. at ¶ 12. In a sealed statement, the victim further stated that she would try to "kick [Mr. Pena] and push him away" when he assaulted her, but he "would push me against the wall." I R. doc. 42. In addition to this physical coercion, the victim reported threats; Mr. Pena said that if she did not acquiesce to his demands, he would leave her mother and find a new girlfriend. See IV. R., P.S.R. at ¶ 8. According to the victim, Mr. Pena threatened that if she disclosed his conduct to anyone, she would be taken away from her mother. See IV R., P.S.R. at ¶ 10. She also reported being threatened with increased household chores if she failed to comply with his desires. I R. doc. 42. A medical examination of the victim revealed that she suffered hymenal disruption, vaginal disruption and scarring, and anal flattening and thickening. See IV R., P.S.R. ¶ 15. It bears noting that Mr. Pena neither disputes nor challenges these facts.

On November 5, 1998, a federal grand jury indicted Mr. Pena. In the following months, the government and Mr. Pena negotiated a plea agreement. On

February 3, 1999, counsel for the government sent a letter to Mr. Pena offering a plea agreement in which he would plead guilty to two counts of aggravated sexual abuse of a child, and in exchange, the government would agree to a non-binding stipulation that he receive a three level decrease for acceptance of responsibility and dismissal of other charges. The letter also stated that under the plea, the government "estimate[d] that Mr. Pena would be facing an approximate range of 121 to 151 months imprisonment, *depending on his criminal history and other factors*." I R. doc. 43, Attachment A (emphasis added). Counsel for Mr. Pena responded by letter, asking for two more non-binding stipulations, namely, that Mr. Pena would not receive an enhancement for serious bodily injury, § 2A3.1(b)(4), but would receive an enhancement because the child was in his care and custody, § 2A3.1(b)(3). See id., Attachment B.

On April 22, 1999, Mr. Pena appeared with counsel before the district court to plead guilty in accordance with the final plea agreement. At this plea colloquy, Mr. Pena admitted that he signed the plea agreement freely, with the knowledge that the sentencing guidelines would dictate his sentence. Change of Plea Hearing, April 22, 1999, Tr. 4-7. Moreover, Mr. Pena acknowledged that he understood that the sentence ultimately imposed might be different than any estimate previously given to him by counsel. See id. at 7. The plea agreement itself was silent as to an enhancement for the use of force. Moreover, it contained

- 4 -

an integration clause, stating that the plea agreement was the complete statement of agreement between the parties, and could not be altered absent a writing signed by all parties. I R. doc. 36 at ¶ 15.

In June of 1999, the government filed a notice of substitution of counsel, substituting Kathleen Bliss for the departing Michael Cox. Shortly thereafter, the U.S. Probation Office issued the presentence report. The PSR was silent as to the four-level enhancement for the use of force at issue in this case, although it did recite the above facts describing the physical and psychological coercion Mr. Pena exacted upon the victim. The government subsequently objected to the PSR's failure to recommend a use of force enhancement, pursuant to § 2A3.1(b)(1). A Revised PSR was issued on July 26, 1999, incorporating the government's suggestion. Mr. Pena objected to the enhancement, arguing that it violated the plea agreement, and was not supported by the facts. The Probation Office issued a Second Addendum to the PSR, adhering to its view that an enhancement was warranted. At the close of the sentencing hearing that followed, the district court advised Mr. Pena that a use of force enhancement was appropriate, but if Mr. Pena felt misled by the government regarding the estimated penalty he was facing, he could withdraw his plea. Thirteen days later, September 14, 1999, the district court reconvened the sentencing hearing. Mr. Pena declined to withdraw his plea, although defense counsel again objected to the

enhancement.

Discussion

Waiver

The government argues that Mr. Pena is raising the issue of double counting for the first time on appeal, and thus our review of the district court's application of the sentencing guidelines is for plain error only. <u>See</u> <u>United States v. Lindsay</u>, 184 F.3d 1138, 1142 (10th Cir.), <u>cert. denied</u>, 120 S. Ct. 438 (1999). Our review of the record, however, shows that Mr. Pena did raise this issue before the district court in his sentencing memorandum, and during the sentencing hearing. <u>See</u> I. R. doc. 44 at 2 ("The guidelines already take such factor into consideration, as there is a four level enhancement required when the victim of the sexual offense is under the age of 12"); III. R. at 14 ("...the force enhancement does not apply and . . . much of the conduct alluded to by the government and alluded to by probation in the presentence report has already been covered by the federal sentencing guidelines in terms of enhancements that apply."). Moreover, the record reflects that both the government and the district court understood Mr. Pena's argument was premised on the notion that imposing enhancements for both youth of the victim and use of force constitutes impermissible double counting. <u>See</u> <u>e.g.</u>, II R. at 17 ("[W]e're not relying on the

age of the child, that is covered by 2241(c). However, this man used means that are consistent with 2241(a), means of force."); III R. at 15 ("I understand your argument that there have been enhancements based upon the age of the victim . . . however, the sentencing guidelines don't say either/or, they provide for enhancements based upon each of these separate criteria, and so I conclude . . . that the enhancement for use of force is appropriate."). Thus, Mr. Pena effectively preserved the issue of double counting for appeal, and our review of the district court's application of the sentencing guidelines is de novo, given that none of the facts underlying the conviction are disputed. See United States v. Fisher, 132 F.3d 1327, 1328 (10th Cir. 1997).

Double Counting

The essence of Mr. Pena's argument is that a sentencing enhancement for the use of force is implicit in the U.S.S.G. § 2A3.1(b)(2)(A) enhancement for a victim under twelve years of age. Mr. Pena asserts that because children under the age of twelve are legally incapable of consent to sexual acts, there is a presumption that force was applied. Thus, to apply enhancements for the use of force and for the victim's youth constitutes impermissible double counting. The government responds that the enhancement provisions of §§ 2A3.1(b)(2)(A) and 2A.3.1(b)(1) address different conduct, do not overlap and serve different purposes. Thus, the government contends, applying both enhancements to the

same set of facts does not amount to double counting.

The Sentencing Guidelines specify that offense level adjustments for more than one specific offense characteristic are cumulative, whereas within each specific offense characteristic they are alternative. See U.S.S.G. § 1B1.1, comment, n.4. Double counting "'occurs when the same conduct on the part of the defendant is used to support separate increases under separate enhancement provisions which necessarily overlap, are indistinct, and serve identical purposes.'" Fisher, 132 F.3d at 1329 (citation omitted). All three criteria must be satisfied to constitute double counting. See United States v. Rucker, 178 F.3d 1369, 1371 (10th Cir.), cert. denied, 120 S. Ct. 386 (1999). Moreover, a court may apply separate enhancements to reach distinct aspects of the same conduct. See Fisher, 132 F.3d at 1329; see also, Rucker, 178 F.3d at 1372 ("[T]he enhancements serve different purposes if only because they punish activities that are, while related, not indistinct."). That is, the court may punish the same act using cumulative sentencing guidelines if the enhancements bear on "conceptually separate notions relating to sentencing." United States v. Lewis, 115 F.3d 1531, 1537 (11th Cir. 1997). Recently, this court, following the reasoning of the Ninth Circuit, held that such cumulative sentencing is permissible when the separate enhancements aim at different harms emanating from the same conduct. See Rucker, 178 F.3d at 1373. Put another way, the guidelines' enhancements are

tailored to the various harms that may attend a single criminal act. This flexibility demonstrates the Commission's likely recognition that the same harms are not always present in every instance of a certain criminal act. See id at 1372. Thus, two similar crimes may warrant different enhancements depending upon the resulting harms.

Applying these principles to the instant case, it is clear that the district court was correct in applying both enhancements. Sections 2A3.1(b)(2)(A) and 2A3.1(b)(1) serve distinct purposes, and aim at different harms. Sentencing enhancement pursuant to § 2A3.1(b)(2)(A) punishes sexual contact with a child under the age of twelve years old, as such children are incapable of giving effective legal consent. Enhancement pursuant to § 2A3.1(b)(1) punishes the actual use of force used to overbear the will of another in perpetrating aggravated sexual abuse. Despite Mr. Pena's claims that these concepts are always inextricably intertwined, not every instance of sexual contact with a child under the age of twelve involves actual physical force. See e.g., United States v. Has No Horse, 11 F.3d 104, 105 (8th Cir. 1993) (noting that eleven year old victim and defendant engaged in consensual sex). In this way, the law recognizes the distinction between legal and factual consent. This distinction is borne out by both the Sentencing Guidelines themselves, and the decisions of this court. See U.S.S.G. § 2A3.1, Background ("Any criminal sexual abuse with a child less than

twelve years of age, regardless of 'consent,' is governed by § 2A3.1"); United States v. Coronado-Cervantes, 154 F.3d 1242, 1244-45 (10th Cir. 1998) (noting that non-forcible sex offenses can be crimes of violence); United States v. Passi, 62 F.3d 1278, 1282 (10th Cir. 1995) (approving district court's conclusion that sexual abuse of one's thirteen year old daughter is a crime of violence "whether or not raw force is used."); United States v. Reyes-Castro, 13 F.3d 377, 379 (10th Cir. 1993) (holding that an act constitutes a crime of violence if the risk of violence is present, regardless of whether or not physical force is actually used). In this case, Mr. Pena's victim was incapable of legal consent by virtue of her age, nor did she give factual consent, evidenced by the fact that Mr. Pena had to enlist the use of actual physical force to overcome her resistance. It was therefore appropriate to enhance Mr. Pena's sentence pursuant to guidelines tailored to address these separate and distinct aspects of his criminal conduct towards his stepdaughter.

Mr. Pena argues, relying primarily on Reyes-Castro and Coronado-Cervantes, that the element of force is implicit in any offense involving a child under the age of twelve years. Mr. Pena contends that these cases support his view, in that they hold that such sexual abuse of a child is a "crime of violence" for various sentencing purposes. See Coronado-Cervantes, 154 F.3d at 1245 (in the context of U.S.S.G. § 4B1.2); Reyes-Castro, 13 F.3d at 379 (in the context of

18 U.S.C. § 16(b)). However, Mr. Pena misconstrues these precedents. As stated above, both Reyes-Castro and Coronado-Cervantes explicitly recognize that it is the serious risk of physical force, not the actual presence of such force that determines whether or not a certain act constitutes a "crime of violence." See also Passi, 62 F.3d at 1282. Additionally, Mr. Pena finds no support in United States v. Pewenofkit, No. 98-6105, 1999 WL 169429 (10th Cir. March 29, 1999), or Passi. While no enhancement for the use of force (specifically pursuant to § 2A3.1(B)(1)) was applied in these cases, both precedents are silent as to its application as a general matter. Thus, these authorities do not advance Mr. Pena's assertions. Finally, Mr. Pena argues that because a force enhancement is mandatory in the context of adult rape, see United States v. Talk, 13 F.3d 369, 371-72 (10th Cir. 1993), but not in the context of aggravated sexual abuse of a child, it is clear that the latter offense has an implicit enhancement for the use of force. This argument is without merit. As we stated above, child sexual abuse can take place even in the face of factual consent by the victim. The same cannot be said of adult rape. Thus, in a case involving the sexual abuse of a child, the guidelines provide the sentencing judge with the flexibility to apply a force enhancement depending on the facts. The force enhancement is not mandatory – not because it is already contemplated by enhancements for the youth of the victim – but rather because unlike adult rape, it may not always be appropriate

- 11 -

given the factual predicates of the crime.

Sufficiency of Evidence

Mr. Pena next argues that the government introduced facts insufficient to support an enhancement pursuant to § 2A3.1(b)(1). He contends that because he did not use "the brute force associated with rape," and his victim did not fear for her life, such an enhancement is not permissible.

We will uphold the factual findings of the district court unless they are clearly erroneous, viewing the evidence in the light most favorable to the court's determination. See United States v. Cruz, 58 F.3d 550, 553 (10th Cir. 1995). As the government points out, there is no statutory definition of "force" provided by the Guidelines. However, two of this court's unpublished dispositions and precedents from our sister circuits are instructive in this regard. We hold that the § 2A3.1(b)(1) enhancement is justified by the factual finding that the perpetrator used "'such physical force as is sufficient to overcome, restrain or injure a person; or the use of a threat of harm sufficient to coerce or compel submission by the victim.'" United States v. Yazzie, 97-2201, 1998 WL 276362, at **3 (10th Cir. May 27, 1998) (quoting United States v. Weekley, 130 F.3d 747, 754 (6th Cir. 1997) (quoting United States v. Fire Thunder, 908 F.2d 272, 274 (8th Cir. 1990))); see also United States v. Pewenofkit, No. 98-6105, 1999 WL 169429, at **3 (10th Cir. March 29, 1999); United States v. Lucas, 157 F.3d 998, 1002 (5th

Cir. 1998); <u>United States v. Fulton</u>, 987 F.2d 631, 633 (9th Cir. 1992); <u>United States v. Lauck</u>, 905 F.2d 15, 17-18 (2d Cir. 1990); H.R. Rep. No. 99-594 at 14 n. 54a (1986), reprinted in 1986 U.S.C.C.A.N. 6186, 6194, n. 54a.  That is, a force enhancement is appropriate when "the sexual contact resulted from a restraint upon the other person that was sufficient that the other person could not escape the sexual contact." <u>Lauck</u>, 905 F.2d at 18. Moreover, force may be inferred by such facts as disparity in size between victim and assailant, or disparity in coercive power, such as that between an adult and a child.  <u>See</u> <u>Pewenofkit</u> 1999 WL 169429, at **3 (quoting <u>Lucas</u>, 157 F.3d at 1002).

Applying these principles to the facts of the instant case, we find that the district court did not err in holding that there was sufficient evidence to justify a four-level enhancement for the use of force, pursuant to § 2A3.1(b)(1).

<u>Breach of Plea Agreement</u>

Finally, Mr. Pena argues that the government breached its plea agreement with him, in that it sought a § 2A3.1(b)(1) force enhancement about which the plea agreement was silent.  Moreover, Mr. Pena points to estimates provided by the government during plea negotiations that were lower than his actual sentence. Thus, Mr. Pena argues that the government implicitly promised (through its silence) not to pursue the force enhancement.

We review de novo, as a question of law, whether government conduct has

violated a plea agreement. See United States v. Brye, 146 F.3d 1207, 1209 (10th Cir. 1998). The government is required to fulfill all promises made in exchange for a defendant's plea of guilty. See id. We apply a two-step analysis to determine whether such a breach has occurred: (1) we evaluate the nature of the government's promise; and (2) we examine this promise as it relates to the defendant's reasonable understanding at the time the guilty plea was entered. See id. at 1210. The general principles of contract law guide our evaluation of the government's obligations under the agreement. Thus, we look to the express language of the agreement for guidance. However, we will not permit the government to rely upon a hyper-literal construction of the agreement to evade fulfilling its promises. See id. Nevertheless, the government's obligations to the defendant do not arise from mere silence. See United States v. Rockwell Int'l Corp., 124 F.3d 1194, 1199 (10th Cir. 1997). Moreover, it is well-settled that the parole evidence rule precludes parties from admitting extrinsic evidence to contradict or add to the terms of a binding and completely integrated agreement. See id.

In the instant case, the government's plea agreement made no reference to an enhancement for the use of force, pursuant to § 2A3.1(b)(1), although the government did stipulate that § 2A3.1(b)(4) did not apply, but that § 2A3.1(b)(3)(A) did apply. Thus the plain language of the agreement does not

- 14 -

support Mr. Pena's claim that the government was specifically obliged not to seek a force enhancement in exchange for his guilty plea. Furthermore, the government clearly states in paragraph 6(a) and (b) of the Plea Agreement that it would not agree to a specific sentence, nor would it agree not to oppose Mr. Pena's request for a specific sentence. Additionally, the plea agreement made it clear, and Mr. Pena conceded, that his ultimate sentence might be different from that discussed in the agreement. Moreover, the plea agreement contained an integration clause, stating that the final version represented the complete agreement between the government and Mr. Pena. Thus, Mr. Pena is unable to alter the terms of the plea agreement with reference to the government's early offense level estimates. It bears noting that this court has held an erroneous sentencing estimate does not render a plea involuntary. See United States v. Williams, 919 F.2d 1451, 1456-57 (10th Cir. 1990). Finally, Mr. Pena was given an opportunity by the district court to withdraw his plea, if he felt that the government had violated its agreement. Mr. Pena's subsequent acceptance of the plea bargain shows that his plea was not predicated on an unfulfilled promise or representation. See United States v. Barber, No. 98-2106, 1999 WL 152294, at **3 (10th Cir. March 22, 1999). Thus, we conclude that the government did not violate its plea agreement with Mr. Pena, and he is therefore not entitled to relief on this ground.

AFFIRMED.