FILED
United States Court of Appeals
Tenth Circuit

December 10, 2009

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

ALBERT LEE VANN,

    Defendant-Appellant.

No. 09-7017

(D.C. No. 6:08-CR-00038-JHP-1)
(E.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE, HOLLOWAY,** and **HOLMES**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination
of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is,
therefore, submitted without oral argument.

Defendant Albert Lee Vann pled guilty to Aggravated Sexual Abuse of a
Minor Child in Indian Country in violation of 18 U.S.C. §§ 2241(c), 1151 and

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

1153. On appeal, Vann challenges his sentence arguing that the district court erred in applying the use of force enhancement contained in U.S.S.G. § 2A3.1(b)(1) because the elements of the enhancement were not proven by a preponderance of the evidence. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and AFFIRM.

## I.

On February 12, 2008, the Federal Bureau of Investigation (FBI) was notified that E.O., a 13-year old Indian female, had given birth to a child on February 6, 2008. At that time E.O. was living with her mother and her stepfather, Albert Lee Vann, in their home in Adair County, Oklahoma, which is in Indian Country. E.O. told FBI agents that Vann was the father of her child and that he had sexually assaulted her on numerous occasions from the time she was 9 years old. The agents approached Vann with this information and he agreed to produce a DNA sample and advised them that he was probably the father of the child because he had engaged in sexual intercourse with E.O. on one prior occasion. DNA testing determined that Vann could not be excluded as the biological father of E.O.'s child.

Vann subsequently entered an unconditional plea of guilty to one count of Aggravated Sexual Abuse of a Minor Child in Indian Country. Pursuant to this plea, the United States Probation Office prepared a Presentence Report ("PSR") in which it calculated Vann's offense level to be 39. This calculation was based on

several enhancements including a four-level enhancement for use of force pursuant to U.S.S.G. § 2A3.1(b)(1).  With respect to this enhancement, the Probation Office indicated in the PSR that "Vann held the victim's arms to prevent her from pulling away from him, thereby, using force."  PSR, p. 4 (¶19).

In a letter to the Probation Office, Vann objected to the proffered factual basis for the use of force enhancement, pointing the Probation Office's attention to a videotaped interview wherein E.O. did not tell a social worker that Vann had held her arms down during any of the occasions in which he sexually assaulted her.  The government responded with its own letter to the Probation Office in which it noted that pursuant to our holding in United States v. Reyes-Pena, 216 F.3d 1204 (10th Cir. 2000), force may be implied for these purposes, but nonetheless defended the accuracy of the PSR.  In response to these letters, the Probation Office issued an addendum to the PSR in which it buttressed its earlier support for the use of force enhancement by noting the standard set forth in Reyes-Pena and citing several facts that support the inference it allows, including Vann's authority over E.O. as her stepfather, her young age and her report that Vann told her not to tell anyone because if she did she would be taken away from her mother.

At Vann's sentencing hearing E.O. was the only witness presented to the district court with respect to the use of force enhancement.  E.O. testified that Vann assaulted her in various rooms throughout their home and that during each

3

encounter she would lay on her back while Vann either stood in front of her or laid on top of her. She further testified that she wanted Vann to stop because he was hurting her, that she repeatedly told Vann that he was hurting her and that she tried to move around to get out from under him, but was unable to do so.

E.O. also testified on direct examination by the government that she had tried to push Vann off of her during the attacks, but that he would hold her arms down or otherwise physically overcome her resistance. On redirect, however, E.O. testified that her earlier testimony regarding pushing Vann and his holding her hands was not true, but did say that she had considered hitting Vann, but chose not to because she did not believe it would cause him to stop. Finally, E.O. testified that she did not report the assaults because Vann had told her that if she did, she would be taken away from her mother and that he didn't want to ruin his relationship with her mother.

After hearing the testimony of E.O. and the arguments of counsel at the sentencing hearing, the district court found by a preponderance of the evidence that Vann used force in sexually assaulting E.O. and that the corresponding four-level enhancement of U.S.S.G. § 2A3.1(b)(1) was therefore appropriate. On March 3, 2009 Vann filed a timely Notice of Appeal.

## II.

When considering a district court's application of the Sentencing Guidelines we review legal questions *de novo* and findings of fact for clear error,

4

giving due deference to the district court's application of the Guidelines to the facts. United States v. Cherry, 572 F.3d 829, 831 (10th Cir. 2009). We review whether the facts found by the district court support the application of the Guideline it selected *de novo.* Id.

Sentencing determinations regarding relevant conduct and offense characteristics must be proved to the district court by a preponderance of the evidence. United States v. Gomez-Arrellano, 5 F.3d 464, 466 (10th Cir. 1993). Vann argues that the elements of § 2A3.1(b)(1) were not so proved with respect to his sexual assaults of E.O. and that the district court's application of its corresponding four-level enhancement was therefore inappropriate. In support of this position Vann offers the following evidence: (1) the PSR's original basis for the enhancement is not supported in the record; (2) the physical positioning of Vann and E.O. during the assaults did not constitute force; (3) there was no direct testimony that E.O. submitted to the assaults based on Vann's threat that she would be separated from her mother if she reported them; and (4) E.O. did not testify that Vann's larger physical stature, his status as an adult or the fact that he was her stepfather were factors that forced her to submit to the assaults.

Vann's argument is unavailing. Given our decision in Reyes-Pena, there are ample facts in the record to support a finding that his use of force was proved by a preponderance of the evidence. In finding that there was sufficient evidence to support a § 2A3.1(b)(1) enhancement in Reyes-Pena, we held that the use of

force enhancement is appropriate when the sexual contact resulted from a restraint upon the victim such that he or she could not escape and went on to say that even in the absence of direct evidence, "**force may be inferred by such facts as** disparity in size between the victim and assailant, or **disparity in coercive power, such as that between an adult and a child."** 216 F.3d at 1211 (emphasis added).

In the instant case, E.O. testified that Vann was on top of or facing her during the encounters and that she tried to move around to get out from under him, but was unable to do so. This is precisely the direct use of force described in Reyes-Pena. 216 F.3d at 1211. Further, pursuant to our holding in Reyes-Pena we may infer that Vann used force because as E.O.'s stepfather, he was in a position to coerce her to submit to his assaults and the record indicates that he did so by telling E.O. that if she reported the incidents she would be separated from her mother. Id. Finally, the disparity in size between the two[1] and the fact that at the time of the incidents Vann was approximately 42 to 46 years old while E.O. was approximately 9 to 13 years old, further supports this inference. Id.

Vann's continued focus on the fact that there is no direct evidence that E.O. struggled against him or that he held her down is misguided. In light of our

---

[1] Vann is described in the PSR as being 5'9" tall and weighing 170 pounds. E.O. could not recall her weight at the time of the attacks, but as a 9 to 13-year girl she was no doubt much smaller than Vann.

6

holding in <u>Reyes-Pena</u> the government was able to establish his use of force even without such evidence. Simply put, the fact that E.O. recanted her testimony regarding this subject at the sentencing hearing does not undermine our ability to find by the preponderance of the evidence that Vann used force in sexually assaulting her.

## III.

For the reasons discussed above, we AFFIRM the district court's application of the four-level enhancement of U.S.S.G. § 2A3.1(b)(1).

Entered for the Court

Mary Beck Briscoe
Circuit Judge

7