FILED
United States Court of Appeals
Tenth Circuit

October 24, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

JORDAN SMITH,

     Defendant - Appellant.

No. 12-3289

(D.C. No. 6:11-CR-10187-MLB-2)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **BALDOCK**, and **EBEL**, Circuit Judges.[**]
_____

Defendant Jordan Smith pleaded guilty to two counts of wire fraud in violation of 18 U.S.C. § 1343.  Applying the 2011 Guidelines Manual, the presentence report (PSR) assigned Defendant a total offense level of 16 and a criminal history category of VI, yielding a guideline sentencing range of 46–57 months.  See U.S.S.G. § 5A.  At sentencing, the district court varied upward and sentenced Defendant to a term of 180 months' imprisonment on each § 1343 count.  The court imposed these sentences to run

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] After examining appellant's brief and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.  See Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G).   The case is therefore ordered submitted without oral argument.

concurrently with each other and consecutively to a Kansas state sentence Defendant is serving for burglaries and thefts underlying the wire fraud offenses. On appeal, Defendant challenges his sentence as both procedurally and substantively unreasonable. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742, we reverse and remand for resentencing.

I.

Defendant acknowledged in his plea agreement that, as part of his scheme to defraud, he burglarized residences and businesses and stole personal property. He then listed and sold the property on Craigslist or had others do so for him. Defendant admitted 36 victims of his scheme incurred a total loss of $115,964.78. Although Defendant was only 21 years old at the time he committed the instant offenses, he had already amassed an extraordinary criminal history. The PSR listed 11 convictions for misdemeanor theft (two of which Defendant committed while a minor), 5 for felony theft, 5 for burglary, 15 for parking or traffic violations, 2 for identity theft, and 2 for domestic battery. Defendant was already serving a nine-year state sentence for the burglaries and thefts underlying his wire fraud scheme when the PSR was prepared, as the state court had revoked his original 108-month suspended state sentence for these crimes. Oddly, although the PSR considered these crimes relevant conduct and used them to increase Defendant's offense level under the Guidelines, nowhere does the PSR mention U.S.S.G. § 5G1.3(b), which requires that a guideline sentence run concurrent to an undischarged sentence for relevant conduct used to increase a defendant's offense level.

-2-

Prior to sentencing, the district court filed a Federal Rule of Criminal Procedure 32(h) letter. The court stated it was "considering a variance from the guideline sentence of up to and including the maximum 20 years imprisonment on each of the counts of conviction to run consecutively" to each other and "consecutively to any state sentence the defendant is serving." The court justified the possible variance on a number of factors. These included Defendant's history and characteristics, which indicated a dedication to the criminal lifestyle, the fact the crimes underlying the wire fraud were burglaries of dwellings and thus crimes of violence, and the need to protect the public from Defendant.

At sentencing, the district court adopted the PSR's calculations, but varied upward. Both in his sentencing memorandum and at sentencing, Defendant argued that, under U.S.S.G. § 5G1.3(b), a within-guideline sentence must run concurrently with his undischarged state sentence. The district court never acknowledged § 5G1.3(b), but rejected Defendant's request for a concurrent sentence on four grounds. First, the court felt it was "not required to ignore [D]efendant's conduct which is part and parcel of his federal crimes." Second the court felt no double punishment was involved because it was sentencing Defendant for federal crimes and not state crimes. Third, the court did not trust Defendant would have to serve his full state sentence. Fourth, the court stated "the bottom line" was concurrent federal and state sentences would not be sufficient in Defendant's case.

Based on these considerations, the district court sentenced Defendant to 180 months' imprisonment on each wire fraud count, to run concurrently with each other and

consecutively to his state sentence. In explaining the sentence the court explicitly considered a number of the sentencing factors under 18 U.S.C. § 3553(a). In analyzing unwarranted sentence disparity under § 3553(a)(6), the court noted only that it had sentenced a codefendant to less time but "many factors differentiate[d] him and his conduct from this Defendant." After imposing the sentence, the court asked if Defendant had any objections. Defendant first stated he had no procedural objections, but then objected to the length of his sentence. Defendant again argued applying his federal sentence consecutively to his undischarged state sentence was inconsistent with U.S.S.G. § 5G1.3(b) and punished him twice for the same crime. Further, Defendant noted the combination of the upward variance and the consecutive nature of the sentence resulted in an effective sentence five to six times longer than the Guidelines recommended. At no point in responding to Defendant's objections did the court acknowledge § 5G1.3(b). Rather, the court seemed perplexed by Defendant's § 5G1.3(b) objection, asking: "You think that wire fraud should be considered part of the state crime?"

## II.

Defendant argues the district court (1) committed procedural error by failing to consider nationwide sentencing disparities under § 3553(a)(6), and (2) committed substantive error by, among other things, sentencing him inconsistently with U.S.S.G. § 5G1.3(b) and United States v. Kieffer, 681 F.3d 1143 (10th Cir. 2012). Our review of Defendant's sentence proceeds in two steps. "The correct Guidelines calculation is the natural starting point from which the sentencing court exercises its discretion under § 3553(a)." Kieffer, 681 F.3d at 1164 (internal quotations omitted). As such, we "'must

-4-

first ensure that the district court committed no significant procedural error' in calculating the advisory guideline range. That is, we must determine whether the method by which the court calculated that range is 'procedurally sound.'" Id. at 1165 (quoting United States v. Gall, 552 U.S. 38, 51 (2007)). Although the Guidelines are now advisory, improperly calculating the guidelines range is an example of "likely 'significant procedural error,'" as is failing to properly consider the 18 U.S.C. § 3553(a) factors. Id. "*Only if* the district court follows sound procedure may we then consider whether the resulting sentence is reasonable in substance." United States v. Cerno, 529 F.3d 926, 937 (10th Cir. 2008) (emphasis added).

A.

"Our preliminary task is to identify [Defendant's] procedural challenges." United States v. Lente, 647 F.3d 1021, 1031 (10th Cir. 2011). Defendant properly characterized his sentencing-disparity argument as procedural. Defendant, however, mischaracterized his § 5G1.3(b) argument, both at sentencing and now on appeal, as substantive. In calculating the advisory guideline sentencing range, "courts must correctly determine whether the Guidelines recommend concurrent sentences," and "[f]ailure to do so results in *procedural error*." United States v. Nania, 724 F.3d 824, 830 (7th Cir. 2013) (citing Kieffer, 681 F.3d at 1167–68) (emphasis added). The district court's failure to account for U.S.S.G. § 5G1.3 in calculating Defendant's within-guideline sentencing range is thus undoubtedly procedural, and we now address it as such.

Although Defendant mischaracterized his § 5G1.3(b) argument as substantive, Defendant raised the § 5G1.3(b) issue both in his sentencing memorandum and at

-5-

sentencing. Further, the record reflects the district court understood Defendant's argument was premised on the notion that imposing his federal sentence consecutively to his state sentence meant he was being punished twice for the same conduct. Thus, Defendant effectively preserved this procedural challenge for appeal. United States v. Reyes Pena, 216 F.3d 1204, 1209 (10th Cir. 2000). When a party preserves its challenge of a court's sentencing procedure, "our standard of review is . . . abuse of discretion, under which we review de novo the district court's legal conclusions regarding the guidelines . . . ." United States v. Gantt, 679 F.3d 1240, 1246 (10th Cir. 2012).

"[I]n general, a district court has broad discretion to sentence a defendant to a consecutive or concurrent sentence." United States v. Contreras, 210 F.3d 1151, 1152 (10th Cir. 2000). U.S.S.G. § 5G1.3(b), however, limits this discretion. It requires a guideline sentence "run concurrently to the remainder of [an] undischarged term of imprisonment" where the undischarged term "resulted from another offense that is relevant conduct to the instant offense of conviction . . . and that was the basis for an increase in the offense level for the instant offense." U.S.S.G. § 5G1.3(b). Relevant conduct includes all acts committed by the defendant for which he is to be held accountable in determining the applicable guideline range. U.S.S.G. § 1B1.3(a) & cmt. 1. Although the Guidelines are now "effectively advisory," United States v. Booker, 543 U.S. 220, 245 (2005), the district court is nevertheless "required to account for [§ 5G1.3(b) where it applies] and, absent a variance based on the § 3553(a) factors, impose a concurrent term." Kieffer, 681 F.3d at 1161.

Here, the PSR applied an 8-level increase to Defendant's base offense level, as "the loss involved was more than $70,000, but less than $120,001," and a 2-level increase, "as the offense of conviction, *including relevant conduct*, involved 10 or more victims, but less than 50." (emphasis added). These enhancements resulted from the harm caused by the scheme underlying the instant wire fraud offenses, including the burglaries and thefts for which Defendant is serving his undischarged state sentence. Defendant's undischarged state sentence therefore resulted from relevant conduct to the instant wire fraud offenses and this relevant conduct was the basis for an increase in his resulting offense level under the Guidelines. See Kieffer, 681 F.3d at 1161 (holding district court erred in *not* considering as relevant conduct various actions which occurred in different jurisdictions but were all part of a common and ongoing wire and mail fraud scheme).

The PSR stated only that Defendant's guideline imprisonment range was 46–57 months. The PSR nowhere mentions that, under U.S.S.G. § 5G1.3(b), Defendant's recommended within-guideline sentence must run concurrently to the undischarged state sentence he was already serving for relevant conduct. Further, at sentencing, the court noted this relevant conduct had raised Defendant's guideline range, but nowhere did it acknowledge that Defendant's undischarged sentence for this same relevant conduct implicated § 5G1.3(b). In fact, in rejecting Defendant's argument for a concurrent sentence the court stated, both at sentencing and then in its written sentencing decision, that it was "not required to ignore Defendant's criminal conduct which was part and parcel of his federal crimes," and that, since Defendant was not "sentenced for federal

-7-

burglary . . . . [n]o double punishment [was] involved." Defendant also objected at sentencing to running his federal sentence consecutively to his state sentence as inconsistent with § 5G1.3, but the court failed to understand this objection. Instead, it interposed the following question: "You think that wire fraud should be considered part of the state crime?" The bottom line is this: nothing in the record gives any indication the court realized that, under U.S.S.G. § 5G1.3(b), Defendant's within-guideline sentence must run concurrent to his undischarged state sentence for relevant conduct. Rather, the record indicates the court believed § 5G1.3(b) inapplicable because the instant offenses were federal crimes and the relevant conduct were state crimes. Therefore, the district court committed procedural error in calculating Defendant's advisory guideline range.

The question then becomes whether the district court's error—failing to apply U.S.S.G. § 5G1.3(b) in calculating Defendant's advisory guideline range—is harmless. "Unless the district court indicated at sentencing that the sentence imposed would be the same under multiple sentencing approaches, *one of which was the correct approach*, we are compelled to remand for resentencing when we find that an improper [guideline construction] was applied." Kieffer, 681 F.3d at 1169 (emphasis added) (internal quotations omitted). "Absent such an indication in the record, we have no way of knowing whether the district court would have imposed the same sentence under a proper application of the Guidelines." Id. "[T]his is not to say procedural error in calculating an advisory guideline sentencing range can never be harmless. But where the beginning point for a sentencing court's analysis of the § 3553(a) factors is *measurably* wrong, the

ending point usually will result from an incorrect application of the Guidelines." Id. at 1170 (emphasis in original).

Although the court varied upward and indicated it would give a consecutive sentence no matter what ("the bottom line . . . is that concurrent federal and state sentences will not be sufficient under all the circumstances"), at no point was this variance based on a proper understanding of the Guidelines and in particular § 5G1.3(b). "To say that the district court would have imposed the same [consecutive] sentence given a new legal landscape places us in the zone of speculation and conjecture—we simply do not know what the district court would have done." Id. (internal quotations omitted). Had the court recognized it was varying from both the term *and* the concurrent nature of the sentence recommended by the Guidelines—and thus that it was varying upward, not by 123 months, but by more than 220 months—the court may have reconsidered the sentence it imposed.

The district court committed procedural error by failing to properly account for U.S.S.G. § 5G1.3(b) when sentencing Defendant and the error was not harmless. We do note, however, that Defendant's state sentence was the result of a combination of state convictions. It is unclear whether certain of these state convictions—for example, his convictions for identity theft and "making false information"—were indeed part of the relevant conduct used to increase Defendant's offense level. On remand, the district court must sort out whether all, or if not all then how much, of Defendant's state sentence was the result of relevant conduct used to calculate his federal offense level. Alternatively, the district court may determine Defendant's state sentence fits under

§ 5G1.3's application note 3(D), which gives the sentencing court, in a "complex" case where the defendant is subject to multiple prison sentences, discretion to determine whether the federal sentence should run consecutively or concurrently to the undischarged state sentences.

B.

Defendant also argues the district court committed procedural error by "failing to properly consider potential sentencing disparities of other similarly situated defendants in other districts in other courts." He argues that § 3553(a)(6) explicitly calls for analysis of "disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), and that such disparity should be analyzed for "nationwide consistency," see Gall, 552 U.S. at 49. Defendant argues the district court, in effect, did not consider § 3553(a)(6) because it considered only disparity between himself and a codefendant with a dissimilar record who was found guilty of dissimilar conduct. Because Defendant did not object to this at sentencing, we review only for plain error.[1] Gantt, 679 F.3d at 1246. Plain error requires that Defendant show: (1) error; that

---

[1] The Government argues Defendant invited error by agreeing at sentencing that this factor weighed "neutral" given his codefendant's sentence. Thus, it argues, this challenge should not be reviewed at all under United States v. DeBerry, 430 F.3d 1294, 1302 (10th Cir. 2005). "[T]he invited-error doctrine precludes a party from arguing that the district court erred in adopting a proposition that the party had urged the district court to adopt." Id. Although Defendant argued before the district court that sentence disparity weighed "neutral" under § 3553(a) because he was not similarly situated to his codefendant, the court first initiated any such error in its 32(h) letter, which focused on sentencing disparity only as between Defendant and his codefendant, rather than nationwide. Defendant thus did not invite any such error but, rather, failed to recognize and object to it at sentencing. Accordingly we review this claim for plain error.

is (2) obvious under current well-settled law; (3) affected the Defendant's substantial rights; and (4) seriously affected the fairness, integrity, or public reputation of judicial proceedings. Id.

The Government contends that, under Gantt, the court committed no error in the first place because "the district court necessarily considered unwarranted sentence disparities among defendants nationwide because it correctly calculated and carefully reviewed the guidelines range." The Government's argument is flawed. We stated in Gantt that "one can say as a general rule that when a court considers what the guidelines sentence (or sentencing range) is, it necessarily considers whether there is a disparity between the defendant's sentence and the sentences imposed on others for the same offense." Gantt, 679 F.3d at 1248–49. That rule, however, does not apply here, as the court failed to correctly calculate, much less consider, the proper guideline range because it failed to acknowledge that, under U.S.S.G. § 5G1.3(b), a within-guideline sentence in this case must run concurrent to Defendant's undischarged state sentence. Because Gantt does not apply we must decide for ourselves whether the court erred in analyzing sentencing disparity only as between Defendant and his codefendant.

We have said "[a] district court may consider sentencing disparities between co-defendants." United States v. Zapata, 546 F.3d 1179, 1194 (10th Cir. 2008). "However, the purpose of the Guidelines is to eliminate unwarranted disparities in sentencing nationwide, not to eliminate disparity between co-defendants." United States v. Gallegos, 129 F.3d 1140, 1143 (10th Cir. 1997); accord Zapata, 546 F.3d at 1194. In Gallegos, we held the district court erred when it reduced the defendant's sentence based

on a disparity between the defendant's sentence and the sentence of a codefendant who pleaded guilty to a lesser charge. Id. at 1144. Further, "our cases establish that sentencing disparity between co-defendants is an impermissible departure factor when the defendants being compared either (1) pled to or were convicted of different offenses or (2) played significantly different roles in the commission of the same offense." United States v. Contreras, 180 F.3d 1204, 1210 (10th Cir. 1999). Although these cases were concerned with pre-Booker departures, we see no reason why the rule should not apply with equal force in the context of a post-Booker variance.

Here, Defendant pleaded guilty to two counts of wire fraud whereas his codefendant pleaded guilty to one. Further, Defendant played a much more significant role in the wire fraud scheme and underlying burglaries and thefts. Although the court was permitted to consider the sentencing disparity between Defendant and his dissimilar codefendant, it erred in relying on that particular disparity alone without considering sentencing disparities nationwide. Although Defendant's sentencing disparity argument is before us on plain-error review, we need not analyze the other elements of plain error. Given our finding that the court committed reversible error in failing to account for U.S.S.G. § 5G1.3(b) in calculating Defendant's advisory guideline sentencing range, on remand the district court will have the opportunity to correctly analyze Defendant's sentence in the context of nationwide sentencing disparity. See United States v. Mitcheltree, 940 F.2d 1329, 1334 (10th Cir. 1991) (holding we need not reach the issue of whether an error constitutes plain error where we reverse on other grounds).

We therefore REVERSE and REMAND with instructions that the district court vacate Defendant's sentence and resentence him in accord with this Order and Judgment.[2]

Entered for the Court,

Bobby R. Baldock
United States Circuit Judge

---

[2] Having concluded the district court committed reversible procedural error, we do not address whether Defendant's federal sentence was substantively reasonable. Cerno, 529 F.3d at 937. When the district court recognizes running Defendant's federal sentence consecutively to his undischarged state sentence amounted to an effective upward variance, not of 123 months, but of more than 220 months, and has the opportunity to analyze this variance in the context of nationwide sentencing disparities, the court may indeed reconsider the length and nature of Defendant's sentence. See United States v. Fitch, 659 F.3d 788 (9th Cir. 2011) (affirming 211-month upward variance where district court found by clear and convincing evidence at sentencing that the defendant murdered his wife to create and sustain his fraud); United States v. Pizzolato, 655 F.3d 403 (5th Cir. 2011) (affirming on waiver grounds a 172-month upward variance where the defendant operated a four-year Ponzi scheme involving 180 victims who lost a total of $19,500,000).

United States v. Smith, No. 12-3289

**EBEL**, J., concurring


I agree that we must vacate Defendant-Appellant Jordan Smith's sentence because

of procedural errors.  Moreover, regardless of whether Smith's federal sentence runs

consecutively or concurrently to his nine-year state sentence, the 180-month above-

guideline federal sentence the district court imposed for his two wire fraud convictions

was substantively unreasonable.  The 180-month sentence was a significant upward

variance, more than three times the top of Smith's advisory guideline range and adding,

in absolute terms, ten years to the usual four- to five-year sentence that the Sentencing

Commission envisioned for a mine-run defendant with the same offense level and

criminal history as Smith.  The district court varied upward to this degree because the

court determined that Smith was incorrigible.  I cannot agree, in light of Smith's young

age (twenty-three at the time of sentencing); the fact that Smith has never, before his

current burglary-and-wire fraud scheme, served any time in prison, only suspended

sentences, and short stints in jail and on work release[1]; and because his prior criminal

---

[1] See United States v. Mishoe, 241 F.3d 214, 220 (2d Cir. 2001) (noting that, "if a
defendant served no time or only a few months for the prior offenses, a sentence of even
three or five years for the current offenses might be expected to have the requisite
deterrent effect"); United States v. Qualls, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005)
("Generally, a lesser period of imprisonment is required to deter a defendant not
previously subject to lengthy incarceration than is necessary to deter a defendant who has
already served serious time yet continues to re-offend."); United States v. Hammond, 240
F. Supp. 2d 872, 880 (E.D. Wis. 2003) (noting that "if a defendant's prior sentences were
measured in months or days, a federal sentence of just a few years would likely provide a
significant deterrent").

conduct does not indicate that Smith committed the same offenses over and over again. There is no question that Smith has amassed a long list of prior convictions, despite his young age. But those convictions were generally for petty crimes and traffic offenses, which Smith's criminal history score already takes into account.

Recognizing that determining whether a sentence is substantively unreasonable is a sui generis endeavor grounded in the specific facts in a given case, see United States v. Ressam, 679 F.3d 1069, 1087-88 (9th Cir. 2012), Smith's sentence is similar to the sentence struck down as unreasonable in United States v. Tucker, 473 F.3d 556 (4th Cir. 2007). There, the defendant was convicted of bank fraud; her guideline sentencing range was 24 to 30 months in prison. Id. at 557-58. The district court varied upward ten years to impose a 144-month sentence in order to protect the public, after the court concluded that the defendant was "a scheming thief" and "apparently always would be." Id. at 564-65 (internal quotation marks, alteration omitted). The Fourth Circuit vacated that sentence, holding that, "[a]lthough the risk of recidivism could justify an upward variance, the extreme [ten-year] increase [in that case] reflects an exercise of judicial discretion of the kind that the Sentencing Act was designed to avoid." Id. at 564. In support of its decision, Tucker noted that the Supreme Court had previously stressed the importance of maintaining "'a strong connection between the sentence imposed and the offender's real conduct—a connection important to the increased uniformity of sentencing that Congress intended its Guidelines system to achieve.'" Id. (quoting United States v. Booker, 543 U.S. 220, 246 (2005)); see also United States v. Allen, 488 F.3d 1244, 1258-59 (10th Cir. 2007) (noting "that courts of appeals have regarded

extreme variances on the basis of such factors [as the defendant's likelihood of recidivism or reform] unreasonable"). That reasoning applies to Smith's sentence, as well.

I realize that we must afford the district court's sentencing decision significant deference, see Gall v. United States, 552 U.S. 38, 41, 49, 51-52 (2007), and that it will be a rare sentence that is substantively unreasonable, see United States v. Fraser, 647 F.3d 1242, 1247 (10th Cir. 2011). And Smith's case does present circumstances that would justify an upward variance. But the extent of the variance imposed in this case is just too great for a sentence "sufficient, but not greater than necessary" to achieve the purposes of a federal sentence, 18 U.S.C. § 3553(a). See Gall, 552 U.S. at 50 (noting that "a major departure" from the advisory guideline range "should be supported by a more significant justification than a minor" variance). Smith's 180-month sentence, even run concurrently to his state sentence, is substantively unreasonable.